Merrimack
No. 2000-803

NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS

v.

SUSAN ASSELIN BUTLAND

Argued: February 7, 2002
Opinion Issued: May 7, 2002

*Philip T. McLaughlin*, attorney general (*Michael K. Brown*, assistant attorney general, on the brief and orally), for the plaintiff.

*Normandin, Cheney & O'Neil,* of Laconia (*James F. LaFrance* on the brief and orally), for the defendant.

DALIANIS, J. The defendant, Susan Asselin Butland, appeals from an order of the Superior Court (*McGuire,* J.) setting aside a decision of the New Hampshire Commission for Human Rights (HRC) awarding her damages for sexual harassment that occurred while she was working for the plaintiff, New Hampshire Department of Corrections (DOC). We affirm.

The relevant facts follow. On June 16, 1997, the defendant reported to two supervisors that, on June 12, 1997, she had been sexually harassed by another correctional officer. She informed them that the officer had said that she appeared stressed and that he should take her to a shooting range and "drive a hard one in [her]," and had also touched her breast, asked if she was wearing a bra and asked her what size she was.

She was told that the officer's conduct was a crime and that she would have to file a formal complaint to trigger an investigation. She filed a written complaint the following day, in which she alleged that, in addition to the June 12 incident, the officer had previously engaged in other acts of sexual harassment, including another incident in which he touched her breast. She had not reported these earlier incidents. On the same day as the defendant filed her complaint, a DOC investigator interviewed her and her fiancé, also a DOC officer, separately, about the defendant's allegations.

The following day, June 18, when the defendant arrived at work, she called the investigation unit to complain that the officer who had harassed her had spoken to her and that his presence at CP-5, a locked control post through which she had to pass to get to her station, upset her. Her supervisor asked her to work in another part of the prison, which required her to pass again through CP-5. She called the investigation unit, claiming the officer harassed her once more by asking her for a date.

When the harassing officer was interviewed on June 18, he admitted to the defendant's allegations, although he attempted to minimize his behavior by stating that the defendant may have given him permission to touch her, and that he did not perceive that she objected to his sexual comments. He also prepared a written statement in which he formalized his admissions.

A few hours after the harassing officer was interviewed, the defendant was told of the results of the interview and that the officer would be disciplined for his conduct. When she again complained about his presence at CP-5, she was told that he had not yet been removed from the post due to staffing problems. The officer was removed from the post later that day.

The DOC completed its investigation the following day, June 19, concluding that the defendant's allegations were founded and that the harassing officer's conduct represented a progression of egregious and inappropriate sexual behavior on duty. The final investigative report noted, however, that the defendant had contributed to the progression of sexual harassment by never telling the officer that she was uncomfortable, by never telling him to stop and by remaining friendly with him after the first touching incident.

The harassing officer was suspended later that day. He was informed that his conduct created a hostile work environment and clearly violated the State policy against sexual harassment. He was also informed that although his conduct warranted termination, the DOC elected to suspend him because of his employment record and past performance. He was warned that any future violations of the State's policy would result in his termination. He resigned from the DOC on July 3, 1997.

The defendant filed a charge of employment discrimination with the HRC. Following a hearing, the HRC determined that she had been sexually harassed and that the DOC failed to take prompt and appropriate remedial action. It awarded her damages. On appeal, the superior court set aside the HRC's decision, ruling that the DOC took adequate remedial action to address the harassing officer's conduct. This appeal followed.

On appeal, the defendant contends that the superior court's decision must be reversed because: 1) she was denied due process; and 2) the DOC's remedial action was legally insufficient. We address each argument in turn.

*I. Due Process*

RSA 354-A:22 (1995) sets forth the procedure by which the superior court reviews decisions of the HRC. It provides, in part, that:

> The superior court shall have the authority to make all rulings of law, findings of fact and determinations of damages and fines, if any, *notwithstanding any such rulings, findings or determinations made by the commission.* . . . The jurisdiction of the superior court shall be exclusive and its final order or decree shall be subject to review by the supreme court in the same manner and form and with the same effect as in appeals from a final order or decree in proceedings in equity.

RSA 354-A:22, III (emphasis added).

Notwithstanding this standard of review, at the hearing, the court stated that "[t]he standard of review for the court . . . is a narrow one that a presumption exists the findings are lawful and reasonable and an order

shall not be set aside except for errors of law unless the Court is persuaded by a clear preponderance of the evidence that the order is unjust or unreasonable." In its order, however, the court cited RSA 354-A:22, III as the appropriate standard of review.

■ The defendant argues that the superior court's use of RSA 354-A:22 as the standard of review violated her right to due process under the State and Federal Constitutions because it allowed the court to substitute its judgment for the commission's based upon a review of the "cold" record without hearing testimony. *See Petition of Smith*, 139 N.H. 299, 302-04 (1994). The DOC counters that the defendant failed to preserve her due process challenge. We agree.

We will not review constitutional issues on appeal that were not presented below. *Snow v. American Morgan Horse Assoc.*, 141 N.H. 467, 472 (1996). We adhere to this principle because the lower court must have the "opportunity to consider alleged errors and to take remedial measures when necessary." *State v. McAdams*, 134 N.H. 445, 447 (1991) (quotation omitted).

The defendant never raised the issue of due process before the superior court. Given the superior court's recitation of the more deferential standard of review at the hearing, the defendant could not be expected to raise the issue of due process at that time. Nevertheless, she could have raised the issue in a motion for reconsideration, which she failed to do. Because her due process argument was not presented to the superior court, we decline to review it for the first time on appeal. *See Daboul v. Town of Hampton*, 124 N.H. 307, 309 (1983).

## II. Sufficiency of DOC Remedial Action

With respect to the merits of the superior court's decision, the sole issue for our consideration is whether the court's decision as presented to us that the DOC's remedial action was prompt and appropriate is sustainable on the record. *See* RSA 354-A:22; *see also Massicotte v. Matuzas*, 143 N.H. 711, 712 (1999); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

■ Under RSA 354-A:7, V (1995) (amended 1997), an employer is liable for sexual harassment between fellow employees if it knew or should have known of the conduct and failed to take "prompt, appropriate remedial action." N.H. ADMIN. RULES, Hum 402.02(e) (superseded February 5, 1998, by N.H. ADMIN. RULES, Hum 403.02). This standard is similar to that governing employer liability for co-worker sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1994) (Title

VII). *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 754-59 (1998); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir. 1988). Accordingly, because this is an issue of first impression under State law, we rely upon cases developed under Title VII to aid in our analysis. *See Scarborough v. Arnold*, 117 N.H. 803, 807 (1977).

Remedial action under Title VII is adequate if it is "reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made." *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 480 (7th Cir. 1996) (quotation omitted). The focus is not upon whether the remedial activity ultimately succeeded, but instead upon whether the employer's total response was reasonable under the circumstances. *Id.*

■ The trial court's determination that the DOC's remedial action was both prompt and appropriate under the circumstances is supported by the record. The promptness of the DOC's response is evident. The DOC began its investigation on the same day as the defendant filed her written complaint. Two days later, the DOC completed its investigation and disciplined the harassing officer.

■ We also conclude that the superior court did not err in ruling the DOC's remedial action was appropriate under the circumstances. The defendant complained that on two occasions, the officer touched her breast and on other occasions made sexual comments to her. In light of this conduct, suspending the officer and threatening to terminate him for any future violations was reasonably likely to prevent the harassment from reoccurring. *See Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1031, 1035-36 (7th Cir. 1998) (holding that sanctions ranging from verbal reprimand to three-week suspension without pay were adequate penalties for verbal and physical harassment of employee). Although the defendant may have thought that termination was a more appropriate penalty, the DOC was not legally obligated to use the most serious sanction available. *See Mota v. University of Texas Houston Health Science*, 261 F.3d 512, 525 (5th Cir. 2001).

■ The defendant argues that the DOC's remedial action was legally inadequate because the harassing officer was not immediately removed from his post in CP-5 after she complained that his presence upset her. That the DOC removed the officer from the post within a few hours after she complained, rather than immediately, does not render its response legally inadequate.

The defendant further asserts that the DOC's remedial action was insufficient because its investigation was inadequate and biased. Specifically, she argues that the DOC's investigation was inadequate because: 1) it did not interview her after the offending officer admitted to the allegations so as to give her an opportunity to refute his statements; and 2) it failed to interview two additional witnesses prior to disciplining the offending officer. Despite its alleged flaws, the DOC's investigation found the defendant's allegations to be true. Moreover, after so finding, the DOC promptly took appropriate remedial action. The law requires nothing more. While the defendant complains that the DOC suggested that she was somehow complicit in the harassment and/or motivated by her fiancé's anger, we cannot conclude that the manner in which the DOC conducted its investigation was so flawed or biased as to render its remedial action legally insufficient.

Therefore, the superior court did not commit an unsustainable exercise of discretion in setting aside the HRC's decision on the grounds that the DOC took prompt and adequate remedial action.

*Affirmed.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; BROCK, C.J., and NADEAU and DUGGAN, JJ., concurred.