Hillsborough-northern judicial district
No. 2002-478

LAMONTAGNE BUILDERS, INC.

v.

BOWMAN BROOK PURCHASE GROUP & a.

Argued: October 8, 2003
Opinion Issued: November 24, 2003

*The Law Office of Rodney L. Stark, P.A.,* of Manchester (*Rodney L. Stark* and *Sherry M. Hieber* on the brief, and *Mr. Stark* orally), for the plaintiff.

*Law Office of Joshua L. Gordon,* of Concord (*Joshua L. Gordon* on the brief and orally), for the defendants.

DUGGAN, J. This case involves a dispute over a construction agreement entered into in 1996 between the defendants, Bowman Brook Purchase Group and R. Scott Brooks, and the plaintiff, LaMontagne Builders, Inc. The defendants appeal an order by the Superior Court (*Sullivan,* J.) holding Brooks personally liable for $465,292.85 owed to the plaintiff under the construction agreement and awarding attorney's fees against the defendants. We affirm.

LaMontagne Builders, Inc. (LBI) is a corporation engaged in road building, site development, house construction and other construction activities in the Bedford area. Its principal stockholder and president is Robert S. LaMontagne (LaMontagne). Bowman Brook Purchase Group (the partnership) is a New Hampshire Limited Partnership with HABS/CDM, Inc., a New Hampshire corporation, as its general partner. R. Scott Brooks was an officer of HABS/CDM, Inc. during the time of the dispute over the construction agreement. Brooks also served as an officer of Bowman Green Development Corporation (BGDC), a New Hampshire corporation, which was incorporated in 1996. From 1994 until May 1997, Attorney Charles F. Cleary, pursuant to a formal arrangement, jointly represented LBI, LaMontagne, Brooks, the partnership and BGDC, in several matters including the disputed construction agreement.

On October 14, 1996, LBI entered into a road and utility construction agreement with the partnership to construct roads and make infrastructure improvements on real estate in Bedford. The real estate was owned by the partnership and known as the Bowman Green Subdivision (subdivision). By the end of November 1996, LBI completed the road construction and nearly all of the infrastructure improvements in the subdivision.

During this time, discussions began between LBI and the partnership regarding a joint venture to develop the subdivision. As part of the joint venture, LBI and the partnership agreed to form a new corporation, later established as BGDC, that would own and develop the subdivision. The purpose of creating the new corporation was, in part, to enable Brooks to obtain financing from a bank because the partnership was subject to an outstanding Federal Deposit Insurance Corporation (FDIC) federal court

judgment and related lien in the amount of two million dollars and was thus unable to obtain financing.

In approximately November 1996, Brooks applied for a bank loan to develop the subdivision. In his application, Brooks submitted a package of written materials including financial statements and a description of the project. The description of the project stated that the infrastructure had already been built. The financial statement represented over one million dollars in assets and a total liability of $687,000 in the form of a note payable to Great Oaks Family Holdings, L.P. (Great Oaks), an entity controlled by Brooks and his father. While at the time of the loan application no money had been paid for the construction of the infrastructure, there was no mention in any of the materials submitted by Brooks to the bank of any money owed to LBI.

On December 10, 1996, LBI billed Brooks for $315,459, which represented the entire contract price for the roadwork, plus "extras," and less credits for minor portions of the contract that had not yet been completed. A dispute arose between LBI and Brooks regarding the payment of the bill and, as a result, LBI halted work on the site. When LBI continued to demand payment from Brooks, Brooks stated that he was seeking financing for the project that would enable him to pay LBI.

Before closing on the loan, Attorney Cleary, who was still working under the joint representation agreement, asked LaMontagne whether he objected to Cleary representing Brooks in connection with the bank loan, in light of the ongoing dispute concerning LBI's claim that it was owed money for the construction completed in the subdivision. LaMontagne told Cleary that he did not object to his representation of Brooks on the condition that he ensured that LBI would be paid from the proceeds of the loan. Cleary spoke to Brooks and Brooks agreed to pay LBI's bill out of the proceeds of the loan. Cleary documented the promise in a memo. The bank, however, was never made aware of this agreement. Rather, the loan officer at the bank believed that all work performed by LBI on the site had been paid for by Great Oaks because of the representations made by Brooks both prior to and at the closing on the loan.

On April 30, 1997, as part of the same closing, the partnership transferred the subdivision property to BGDC, which then completed the loan transaction with the bank. The purpose of the transfer was to allow BGDC to borrow the $840,000 from the bank. The proceeds of the loan to BGDC were to be used to repay Brooks and his father for money they claimed to have put into the development of the subdivision project as investors. In connection with the loan, Brooks, on behalf of BGDC,

executed a promissory note to the bank and granted the bank a mortgage on the subdivision.

At the closing, Brooks again represented that all improvements were paid for by executing mechanic's lien affidavits. Brooks also signed, on behalf of BGDC and Great Oaks, the financial statements originally submitted to the bank, which did not indicate that there was any debt to LBI. Brooks added the notation, "I represent no material change."

After the closing, Brooks failed to honor his agreement and did not pay LBI. Instead, all of the loan proceeds went to Brooks individually or to his father or members of the Brooks family, either directly or through Great Oaks. Brooks made subsequent promises to pay LBI if certain work was performed; LBI performed the work, but still was not paid. Despite his promises, Brooks later claimed at trial that he did not have to pay LBI because they did not comply with the road and utility construction agreement. Brooks, however, did not assert this claim until after LBI had relied on his promise to pay it out of the loan proceeds by not seeking a mechanic's lien, which had allowed the loan to proceed.

On July 31, 1997, LBI attempted to secure payment under the contract and filed a petition for a mechanic's lien. The matter was sent to arbitration and, on May 10, 2001, the arbitrator issued an award in favor of LBI in the amount of $465,292.85.

In late 1999, while the arbitration was pending, the bank commenced foreclosure on the subdivision. LBI filed an action in superior court claiming that the transfer of the subdivision from the partnership to BGDC was fraudulent. LBI's petition requested that the court award attorney's fees and either impose a constructive trust on the subdivision, compel payment of foreclosure proceeds into the court or enjoin the foreclosure. The superior court denied LBI's request: (1) to set aside the conveyance as fraudulent; and (2) to enjoin the bank's foreclosure against the subdivision. The superior court further held that LBI was entitled to: (1) a judgment in the amount of $465,292.85 against Brooks personally; and (2) an award against Brooks personally, the partnership, and BGDC for "all of the costs, expenses and attorneys' fees it has incurred in pursuit of payment for its services." This appeal followed.

On appeal, the defendants argue that the trial court: (1) committed an unsustainable exercise of discretion when it awarded damages against Brooks personally and attorney's fees against Brooks and the partnership; (2) improperly pierced the corporate veil to hold Brooks personally liable; and (3) improperly awarded attorney's fees against Brooks and the partnership. We address each argument in turn.

First, the defendants argue that the trial court erred in awarding damages and attorney's fees against them because the court raised the claims "*sua sponte* without providing any notice of those claims." The defendants contend that because LBI filed a petition to set aside a fraudulent conveyance, they were not on notice of any claims for damages or attorney's fees against them. We conclude, however, that the issue was not preserved for appellate review.

"This court has consistently held that we will not consider issues raised on appeal that were not presented in the lower court." *State v. McAdams*, 134 N.H. 445, 447 (1991) (quotation omitted). This principle applies to legal issues that arise after trial as a result of the court's order. *See N.H. Dep't of Corrections v. Butland*, 147 N.H. 676, 679 (2002) (holding that appellant's claim that trial court erred by applying wrong standard of review in its order was not preserved because appellant failed to raise issue in a motion for reconsideration). This requirement is designed to discourage "parties unhappy with the trial result to comb the record, endeavoring to find some alleged error never addressed by the trial judge that could be used to set aside the verdict." *Gammans v. FHP Constructors*, 146 N.H. 702, 704 (2001) (quotation omitted).

██ Here, the defendants did not object on the grounds of lack of notice to LBI's request for findings of fact and rulings of law specifically requesting "judgment in the amount of $465,292.85 against R. Scott Brooks personally inasmuch as Mr. Brooks has used the corporate entity to promote injustice and fraud" and an award against the defendants for "all of the costs, expenses and attorneys' fees it has incurred in pursuit of payment for its services." In addition, once the trial court issued its order awarding damages and attorney's fees, the defendants did not file a motion to reconsider with the trial court. Because the defendants failed to raise the issue of notice when LBI submitted its request for findings of fact and rulings of law and failed to raise the issue of notice after the court issued its order in a motion for reconsideration, the issue was not preserved for appellate review. *See Butland*, 147 N.H. at 679.

██ The defendants next argue that the trial court improperly pierced the corporate veil to hold Brooks personally liable because there was insufficient evidence to support the court's finding that Brooks "used the corporation entity to promote injustice and fraud and that he acted in a fraudulent manner." "The doctrine of piercing the corporate veil is an equitable remedy and, therefore, is particularly within the province of the trial court. We will sustain the judge's conclusion unless clearly

unsupported by the evidence." *Terren v. Butler*, 134 N.H. 635, 640 (1991) (quotation and ellipses omitted).

■ "Certainly one of the desirable and legitimate attributes of the corporate form of doing business is the limitation of the liability of the owners to the extent of their investment." *Peter R. Previte, Inc. v. McAllister Florist, Inc.*, 113 N.H. 579, 582 (1973). We will pierce the corporate veil and assess individual liability, however, where the corporate identity has been used to promote an injustice or fraud. *Terren*, 134 N.H. at 639.

■ The trial court ruled that Brooks used the corporate entity to promote injustice and fraud and acted in a fraudulent manner. The court made the following findings in reaching this conclusion: (1) Brooks breached an express promise to LaMontagne and LBI to pay LBI out of the April 30, 1997 loan proceeds; (2) Brooks made the promise to pay LBI in order to stop LaMontagne from filing a mechanic's lien or interfering with the loan; (3) Brooks knew that the promise to pay LBI when confirmed and documented by Attorney Cleary would cause LaMontagne to not file a mechanic's lien or interfere with the bank loan; (4) Brooks had no intention of honoring the promise to pay LBI; (5) Brooks breached his promise to pay LBI without good cause; (6) Brooks' claimed reasons for breaching the promise to pay LBI were disingenuous and raised in bad faith; and (7) Brooks, his family, or his family-controlled business received most or all of the loan proceeds. The evidence supports these findings, which in turn are sufficient to sustain the trial court's ruling.

Finally, the defendants argue that the trial court improperly awarded attorney's fees against Brooks and the partnership. The plaintiff argues that this issue was not preserved for appeal. Assuming this issue is preserved for appellate review, we uphold the trial court's award of attorney's fees.

■ We review the trial court's award of attorney's fees under an unsustainable exercise of discretion standard, giving deference to the trial court's decision. *See Glick v. Naess*, 143 N.H. 172, 175 (1998); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). To be reversible on appeal, "the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party. If there is some support in the record for the trial court's determination, we will uphold it." *Glick*, 143 N.H. at 175 (quotation omitted).

■ "An award of attorney's fees ... must be grounded upon statutory authorization, an agreement between the parties, or an established exception to the rule that each party is responsible for paying his or her own counsel fees." *Clipper Affiliates v. Checovich*, 138 N.H. 271, 278 (1994) (quotation and brackets omitted). One exception to this rule includes situations "where litigation is instituted or unnecessarily prolonged through a party's oppressive, vexatious, arbitrary, capricious, or bad faith conduct." *Id.* (quotation omitted). Another exception exists "where a party must litigate against an opponent whose position is patently unreasonable. A claim is patently unreasonable when it is commenced, prolonged, required or defended without any reasonable basis in the facts provable by evidence, or any reasonable claim in the law as it is, or as it might arguably be held to be." *Glick*, 143 N.H. at 175 (quotation omitted).

■ Here, the trial court found that the reasons asserted at trial by Brooks for not paying LBI were "disingenuous and raised in bad faith." Furthermore, the court found that Brooks' alleged reasons for not paying LBI are "not a basis for not honoring his promise" because the reasons arose prior to the promise to pay out of the proceeds of the loan and were asserted after LBI relied on Brooks' promise. Finally, the partnership, which originally contracted with LBI for the construction work, failed to pay LBI despite the completion of the contract work and a later arbitration award in favor of LBI. This has required LBI to pursue further litigation, which the partnership has defended "without any reasonable basis in the facts ... or any reasonable claim in the law." *Id.* Because there is some support in the record for the trial court's determination, we uphold the award of attorney's fees. *See id.*

In their brief, the defendants assert several other grounds challenging the trial court's award of attorney's fees. These grounds, however, were not raised in the defendants' notice of appeal and are therefore waived. *See Cricklewood on the Bellamy Condo. Assoc. v. Cricklewood on the Bellamy Trust*, 147 N.H. 733, 739 (2002).

*Affirmed.*

BROCK, C.J., and NADEAU and DALIANIS, JJ., concurred.