Hillsborough-northern judicial district
No. 2005-409

LAMONTAGNE BUILDERS, INC.

v.

R. SCOTT BROOKS & a.

Argued: May 11, 2006
Opinion Issued: October 20, 2006

*The Law Office of Rodney L. Stark, P.A.*, of Manchester (*Rodney L. Stark* and *Sherry M. Hieber* on the brief, and *Mr. Stark* orally), for the plaintiff.

*James M. McNamee, PLLC,* of Nashua (*James M. McNamee* on the brief and orally), for defendant R. Scott Brooks.

DUGGAN, J. The defendant, R. Scott Brooks, appeals a decision of the Superior Court (*Sullivan,* J.), awarding the plaintiff, LaMontagne Builders, Inc. (LBI), attorney's fees and costs. Defendants Bank of New Hampshire, Bowman Green Development Corporation, and HABS/CDM, Inc. did not participate in this appeal. We affirm in part, reverse in part and remand.

This case involves protracted litigation over payment for services under a construction agreement between LBI and defendants Bowman Brook Purchase Group and R. Scott Brooks. This is the second time this matter has come before us. A detailed account of the underlying facts of this case can be found in our previous decision, *see LaMontagne Builders v. Bowman Brook Purchase Group,* 150 N.H. 270 (2003). For the purpose of this appeal, however, we recite the pertinent factual and procedural background below.

LBI is a corporation engaged in road building, site development, house construction and other construction activities in the Bedford area. *Id.* at 271. Bowman Brook Purchase Group (the partnership) is a New Hampshire limited partnership with HABS/CDM, Inc., a New Hampshire corporation, as its general partner. *Id.* R. Scott Brooks was an officer of HABS/CDM, Inc. during the time of the dispute over payment under the construction agreement. *Id.* Brooks also served as an officer of Bowman Green Development Corporation (BGDC), a New Hampshire corporation incorporated in 1996. *Id.*

On October 14, 1996, LBI entered into an agreement with the partnership to construct roads and make infrastructure improvements on real estate owned by the partnership and known as the Bowman Green Subdivision (the subdivision). *Id.* By the end of November 1996, LBI had completed most of the construction work called for in the agreement. *Id.*

Also at about the same time, with LBI's consent, Brooks arranged to transfer ownership of the property to BGDC. *Id.* The purpose of the transfer was, in part, to enable Brooks to obtain financing from a bank. *Id.* Brooks was previously unable to obtain funding because the partnership was subject to an outstanding Federal Deposit Insurance Corporation (FDIC) federal court judgment and related lien in the amount of two million dollars. *Id.* at 271-72.

In November 1996, Brooks applied for a bank loan to develop the subdivision. *Id.* at 272. In his application, Brooks submitted financial statements and a description of the project, which stated that the infrastructure had already been built. *Id.* The financial statements

represented assets worth one million dollars and a total liability of $687,000 in the form of a note payable to Great Oaks Family Holdings, L.P. (Great Oaks), an entity controlled by Brooks and his father. There was no mention in any of the application materials of the money owed to LBI for its work on the project. *Id.*

In December 1996, LBI billed Brooks $315,459 for the work it had completed. *Id.* A dispute arose between LBI and Brooks regarding payment of the bill, and as a consequence, LBI halted work on the site. *Id.* LBI continued to demand payment from Brooks, who responded that he was seeking financing for the project that would enable him to pay LBI. *Id.* Subsequently, LBI and Brooks executed a written document in which Brooks agreed to pay LBI out of the proceeds of the bank loan. *Id.* The bank was never made aware of this agreement. *See id.*

In the spring of 1997, the parties closed on the loan. At the closing, Brooks again represented to the bank that all improvements were paid for, but neglected to disclose the debt to LBI. *Id.* at 273. After the closing, Brooks failed to honor his prior agreement to use the loan proceeds to pay LBI. *Id.* Instead, all of the loan proceeds went to Brooks individually, or to members of his family, either directly or through Great Oaks. *Id.*

On July 31, 1997, LBI attempted to secure payment under the construction agreement and filed a petition for a mechanic's lien in superior court (docket no. 97-C-746). *Id.* Pursuant to the agreement, the matter was sent to arbitration and, on May 10, 2001, the arbitrator issued an award in favor of LBI in the amount of $465,292.85. *Id.* The arbitration award was affirmed by the superior court, and LBI filed a motion for an award of costs and attorney's fees. In an order dated October 24, 2001, the court ruled that it was not in a position to award attorney's fees based upon the claims raised by LBI "because the matter was never tried." The court denied LBI's motion without prejudice "to any request for attorneys' fees in connection with any other claims by [LBI] or alleged wrongful acts by the defendants in this case . . . . If the court finds that [LBI] has proven that the defendants . . . acted in bad faith, the court will consider a request for attorneys' fees."

In late 1999 while the arbitration was still pending, the bank commenced foreclosure on the subdivision. LBI countered by filing another equity petition in superior court seeking to enjoin the foreclosure (docket no. 00-E-011). *Id.* LBI argued that the conveyance of the subdivision property from the partnership to BGDC was fraudulent, and requested that the court either impose a constructive trust on the subdivision or compel payment of the foreclosure proceeds into the court. LBI also asked the court to award attorney's fees. *Id.*

The superior court denied LBI's requests to set aside the conveyance as fraudulent and enjoin the bank's foreclosure. *Id.* However, the court held that LBI was entitled to: (1) a judgment in the amount of $465,292.85 against Brooks personally; and (2) an award against Brooks personally, the partnership, and BGDC for "all of the costs, expenses, and attorney's fees it has incurred in pursuit of payment for its services." *Id.* With respect to the issue of attorney's fees, the court found that the reasons asserted at trial by Brooks for not paying LBI were "disingenuous and raised in bad faith." *Id.* at 276.

The defendants appealed the superior court's ruling, arguing that the court: (1) committed an unsustainable exercise of discretion when it awarded damages against Brooks personally; (2) improperly pierced the corporate veil to hold Brooks personally liable; and (3) improperly awarded attorney's fees against Brooks and the partnership. *Id.* We held that the defendants' first argument was not preserved for appellate review, and otherwise affirmed the superior court's decision. *See id.* at 274-76. LBI made no request for costs or attorney's fees pursuant to Supreme Court Rule 23.

Following the appeal, the superior court conducted a hearing on December 6, 2004, to determine the amount of attorney's fees and costs to be awarded. The hearing was conducted in Cheshire County Superior Court because Justice Sullivan—who had previously presided over this case in Hillsborough County—was transferred to that county. Brooks filed a motion for change of venue and also a motion for Justice Sullivan to recuse himself, the basis for the latter motion being that the court's order awarding judgment against him personally was improper because it was issued *sua sponte*. The court denied both motions.

At the hearing, LBI argued that it was entitled to attorney's fees and costs totaling $518,073.73 for the petition for a mechanic's lien (97-C-746), the petition to enjoin the foreclosure (00-E-011) and other related actions. The defendants raised several objections, including an objection to the reasonableness and appropriateness of the fees. In its order dated February 11, 2005, the court found that although the amount of fees claimed was "significant," it was reasonable due to the extremely complicated nature of the litigation and "the unreasonable, deceitful, dishonest and uncooperative conduct of the defendant R. Scott Brooks."

Next, the court addressed whether attorney's fees and expenses were recoverable in each individual case before the superior court. The court concluded that attorney's fees and expenses in 97-C-746 totaling $162,301.83 were reasonable and necessary. Similarly, the court found that attorney's fees in 00-E-011 in the amount of $235,123.56 were reasonable and necessary. The latter amount included fees and expenses incurred in

connection with the first appeal. LBI's requests for attorney's fees in other related cases were denied.

Finally, the court evaluated LBI's request for costs in the various cases. LBI's request for costs in 97-C-476 in the amount of $360.32 was granted. With respect to LBI's request for costs in 00-E-011, the court awarded $376.72; however, it denied LBI's request for costs in connection with subsequent post-judgment attachment proceedings. In all, the court awarded LBI $397,883.88 in attorney's fees and expenses, and $12,501.59 in costs.

Brooks filed a motion to reconsider arguing, among other things, that because there had been no finding that he had acted in bad faith during any of the proceedings following the trial of the issues in 00-E-011, it was error for the court to award attorney's fees and costs incurred during any of the post-trial proceedings. In its order on the motion to reconsider, the court acknowledged that there was no bad faith in the filing of any post-trial motions. The court explained that its award of fees and costs was based upon "the acts of Brooks . . . which necessitated the entire litigation, including the appeal to the supreme court, the post judgment collection efforts and the hearing on the amount of attorney's fees to be awarded." The court reaffirmed its prior ruling that LBI was entitled to attorney's fees for all of these hearings, and denied Brooks' motion to reconsider.

Following the court's February 11 order, LBI filed a supplemental motion for $13,942.11 in attorney's fees and costs incurred in 00-E-011 between November 2004 and March 2005. LBI argued that the fees and costs included preparation for and attendance at the hearing relative to fees held on December 6, 2004. The court granted LBI's motion for supplemental fees.

On appeal, Brooks argues that the superior court: (1) committed an unsustainable exercise of discretion when it awarded attorney's fees and costs in matters over which it did not preside and matters where there was no finding of bad faith conduct; (2) committed an unsustainable exercise of discretion when it awarded costs and fees incurred by LBI in pursuing analytically severable claims on which it did not prevail; (3) improperly awarded attorney's fees and costs occasioned by LBI's own inefficient and oppressive behavior; and (4) erred when it denied his requests for recusal and for change of venue. In response, LBI argues that Brooks is precluded by principles of res judicata from challenging the scope of the court's award, since he previously contested Justice Sullivan's broad award of fees during the first appeal and lost.

First, we address LBI's argument that Brooks is barred from challenging the award of attorney's fees and costs on res judicata grounds. The record in this case shows that LBI did not raise this argument prior to

or during the December 6, 2004 hearing concerning the award of attorney's fees and costs. "This court has consistently held that we will not consider issues raised on appeal that were not presented in the lower court." *LaMontagne Builders*, 150 N.H. at 274 (quotation omitted). Because LBI raises this issue for the first time on appeal, it has not been preserved for our review, and we decline to address it. *See N.H. Dep't of Corrections v. Butland*, 147 N.H. 676, 679 (2002).

Next we turn to Brooks' arguments. Brooks first contends that it was an error of law for the superior court to award fees and costs in matters over which it did not preside and in matters where there was no finding of bad faith conduct on his part. Specifically, Brooks argues that: (1) the superior court erred by awarding attorney's fees and costs for the first appeal because there was no request under Supreme Court Rule 23; (2) the court erred by awarding fees and costs in 97-C-746; and (3) since the court acknowledged that there was no bad faith conduct on Brooks' part during the post-trial proceedings, the basis for awarding fees and costs extends only to the date of judgment in 00-E-011. We address each argument below.

Supreme Court Rule 23 provides as follows:

> The clerk of the supreme court shall audit and allow bills of costs accruing in this court, and certify the costs to the trial court with the order made in the case. . . .
>
> Costs will be deemed *waived* if a request for taxation of costs with itemization is not filed within 30 days after the date on the order in the case.
>
> In the interest of justice in extraordinary cases, but not as a matter of right, the *supreme court in its sole discretion* may award attorney's fees related to an appeal to a prevailing party if the appeal is deemed by the court to have been frivolous or in bad faith.

SUP. CT. R. 23 (emphasis added).

■ With respect to the issue of costs pertaining to an appeal, the plain language of Rule 23 is clear: the prevailing party on appeal must file an itemized request for taxation of costs with the clerk of the supreme court within thirty days after the date on the order in the case. *Id.* If the prevailing party fails to file an itemized request in a timely fashion, costs will be deemed waived. *Id.* In this case, LBI did not file a timely request for costs with this court. Consequently, it was improper for the superior court to award costs arising out of the first appeal.

■ Similarly, with respect to attorney's fees, Supreme Court Rule 23 plainly states that "the supreme court *in its sole discretion* may award attorney's fees related to an appeal." *Id.* (emphasis added). The rule thus gives this court the *exclusive* authority to award attorney's fees for an appeal, "if the appeal is deemed . . . to have been frivolous or in bad faith." *Id.* LBI made no motion to this court requesting attorney's fees under Rule 23, and therefore procedurally defaulted its opportunity to request fees.

LBI argues that our decision in *Funtown USA, Inc. v. Town of Conway*, 129 N.H. 352 (1987), establishes that it is permissible for trial courts to award attorney's fees for appeals. In that case, we partially reversed a trial court's award of attorney's fees for an earlier appeal because the plaintiff was unsuccessful on one of the claims. *See id.* at 355-56. LBI argues that although we reversed the trial court's award of fees for the unsuccessful appellate claim, we did not rule that the superior court lacked authority to award fees for the appeal. We are not persuaded by this argument. *Funtown* did not address the superior court's authority to award attorney's fees for an appeal, nor did it discuss the scope of Supreme Court Rule 23. As noted above, given the plain language of Rule 23, it was error for the superior court to award attorney's fees and costs for the first appeal in this case, and we reverse this portion of its award.

■ Brooks next argues that it was an unsustainable exercise of discretion for the superior court to award attorney's fees in 97-C-746, because Justice Sullivan previously denied LBI's motion for attorney's fees in that matter. We review the trial court's award of attorney's fees under an unsustainable exercise of discretion standard, giving deference to the trial court's decision. *Van Der Stok v. Van Voorhees*, 151 N.H. 679, 683 (2005). "To be reversible on appeal, the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party. If there is some support in the record for the trial court's determination, we will uphold it." *LaMontagne Builders*, 150 N.H. at 275 (quotation omitted).

■ An award of attorney's fees must be grounded upon statutory authorization, a court rule, an agreement between the parties, or an established exception to the rule that each party is responsible for paying his or her own counsel fees. *Id.* at 276. An exception to this rule includes situations where litigation is instituted or unnecessarily prolonged through a party's oppressive, vexatious, arbitrary, capricious, or bad faith conduct. *Id.* Another exception exists "where a party must litigate against an opponent whose position is patently unreasonable." *Id.* (quotation omitted).

■ As detailed above, the court denied LBI's motion for attorney's fees in 97-C-746 without prejudice, explaining that if at some future date, "the court finds that [LBI] has proven that the defendants ... acted in bad faith, the court will consider a request for attorneys' fees." After the trial in 01-E-011, the court awarded attorney's fees based on Brooks' bad faith conduct. Indeed, in its February 11, 2005 order on LBI's request for attorney's fees following the appeal, the court reiterated its conclusion that Brooks' bad faith permeated the entire litigation, including the arbitration proceeding. It stated, in pertinent part:

> The court was aware of the bad faith or fraud allegations against Brooks when it issued its order on 97-C-746. . . . The truth or falsity of the bad faith or fraud allegations had not yet been tried. The court in its order [in 97-C-746] specifically and expressly reserved the issue of attorney's fees and expenses to be determined after the issue of the alleged fraud ... of Brooks and his controlled entities was tried.

Given that the court's order in 97-C-746 explicitly left open the issue of awarding attorney's fees and costs, and that the court later based its award of fees and costs upon Brooks' bad faith conduct throughout the litigation, we reject Brooks' argument.

■ For similar reasons, we conclude that the superior court's award of costs and fees for the post-trial proceedings—including both the post-judgment attachment proceedings and the hearing on the amount of attorney's fees to be awarded—was lawful. While Brooks points out that the court stated that there was no bad faith in the filing of any of the post-trial motions, the court also made a finding that "Brooks' conduct necessitated the entire litigation including the post judgment attachment proceedings since Brooks has not paid the judgment." Further, the court observed that "Mr. Brooks did everything he could to delay and obstruct [LBI] from receiving a judgment in this case." Consequently, in spite of the court's seemingly inconsistent findings regarding Brooks' conduct during the post-trial proceedings, the court ultimately concluded that Brooks' bad faith conduct persisted throughout the entire litigation. The record in this case supports this conclusion, and, accordingly, we conclude that it was within the superior court's discretion to award fees and costs for the post-trial proceedings.

■ Brooks also contends that it was improper for Justice Sullivan to award fees and costs for matters over which he did not preside. Brooks seems to suggest that it is unlawful for a judge to award fees and costs for

matters over which another judge presided; however, he cites no authority for this position. It is apparent from the record that Justice Sullivan was intimately familiar with the litigation between Brooks and LBI, having presided over the trial of the issues in 00-E-011 and a multitude of hearings in connection with both that case and 97-C-746. The fact that he did not preside over *every* hearing throughout the course of the litigation does not preclude him from awarding attorney's fees and costs for proceedings that were conducted by another superior court justice.

Next, Brooks argues that the superior court committed an unsustainable exercise of discretion when it awarded costs and fees incurred by LBI in pursuing analytically severable claims upon which it did not prevail. In particular, Brooks asserts that the court should have discounted the fees in 00-E-011 that related to LBI's fraudulent transfer claim. LBI objects, arguing that the superior court properly awarded fees for the trial in 00-E-011 because the evidence related to the fraudulent transfer theory was the same evidence needed to prove Brooks' personal liability under the theory of piercing the corporate veil—a theory upon which it succeeded.

Where a party prevails upon some claims and not others, and the successful and unsuccessful claims are analytically severable, any fee award should be reduced to exclude time spent on unsuccessful claims. *Van Der Stok*, 151 N.H. at 685. LBI's fraudulent transfer claim and request that the court pierce the corporate veil in order to impose personal liability on Brooks are not analytically severable claims. Rather, they are alternative theories of recovery. As LBI pointed out, the evidence necessary to prove liability under one theory was also relevant to proving liability under the other theory. We thus agree with LBI that the superior court properly awarded fees for the trial in 00-E-011.

In addition, Brooks contends that the superior court improperly awarded attorney's fees and costs occasioned by LBI's own "inefficient or oppressive behavior." In his brief, Brooks specifically alleges that: (1) it was unreasonable to award LBI attorney's fees associated with the *ex parte* attachment proceedings since the attachments were later found to be improper; (2) it was unfair to award attorney's fees to LBI for the preparation of its motions for fees and costs because LBI refused to provide prompt discovery; and (3) the award of fees was erroneous because LBI "harmed its own interests with five separate court actions." We disagree.

As stated above, we review a trial court's award of attorney's fees under an unsustainable exercise of discretion standard, and if there is some support in the record for the trial court's determination, we will

uphold it. *Id.* at 683; *LaMontagne Builders*, 150 N.H. at 275. As to the first claim, the superior court acknowledged that the *ex parte* attachments were improperly granted. Nonetheless, the court awarded attorney's fees for those proceedings, finding that Brooks' bad faith conduct "necessitated the entire litigation including the post judgment [attachment] proceedings since Brooks has not paid the judgment." Given this finding, the fact that the attachments were found to be improper does not preclude an award of attorney's fees. With regard to the second claim, there is no evidence to support Brooks' contention that LBI engaged in "dilatory and oppressive tactics" when it failed to promptly respond to his interrogatories.

Turning to the third claim, Brooks seems to suggest that it was "inefficient" of LBI to file five separate court actions, and for this reason the award of attorney's fees and costs should be reduced. However, the superior court found that Brooks' deceitful, unreasonable and uncooperative conduct required LBI to file each successive action, from the petition for a mechanic's lien to the post-judgment proceedings. As we previously stated, the defendants' conduct "required LBI to pursue further litigation, which [was] . . . defended without any reasonable basis in the facts . . . or any reasonable claim in the law." *LaMontagne Builders*, 150 N.H. at 276 (quotation omitted). Based upon the foregoing, we cannot conclude that the superior court engaged in an unsustainable exercise of discretion in awarding fees based upon these claims.

Finally, Brooks argues that the superior court erred when it denied his requests for recusal and for change of venue. Brooks' basis for both motions was that the court's order in 00-E-011 awarding judgment against him personally was issued *sua sponte*. Brooks asserts that when a court provides a *sua sponte* remedy that neither party has requested, "it is operating beyond its jurisdiction." He argues that entering a *sua sponte* order "removes the court from the status of an impartial finder of fact and actually aligns the court as a party." Brooks also contends that the court should have granted his motion to recuse because it unlawfully granted *ex parte* attachments against him. He argues that the court had knowledge that exigent circumstances to support an *ex parte* attachment did not exist because of a settlement agreement approved by the court on July 27, 2001.

In response, LBI emphasizes that Brooks argued during the first appeal that the court erroneously imposed personal liability on him *sua sponte*, and we concluded that the issue was not preserved for appellate review. LBI argues that because this issue was not preserved for review in the first appeal, we should find that the matter is settled by principles of res judicata. Assuming without deciding that the doctrine of res judicata does

not apply in this instance, we conclude that the superior court properly denied Brooks' motions to recuse and for change of venue.

▮▮▮▮ A judge must disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where "the judge has a personal bias or prejudice concerning a party or a party's lawyer . . . ." SUP. CT. R. 38, Canon 3E(1)(a). The party claiming bias must show the existence of bias, the likelihood of bias, or an appearance of such bias that the judge is unable to hold the balance between vindicating the interests of the court and the interests of a party. *State v. Hall*, 152 N.H. 374, 377 (2005). Whether an appearance of impropriety exists is determined under an objective standard. *Id.*

Assuming *arguendo* that Brooks' argument—that an award of damages issued *sua sponte* could serve as evidence of a judge's partiality—has some merit, the record reveals that the court did not issue its order imposing personal liability on Brooks *sua sponte*. In its pre-trial request for findings of fact and rulings of law, LBI specifically requested judgment against Brooks personally. Brooks had full notice of the claim of personal liability against him and, in fact, litigated the issue on the merits at trial.

▮▮▮ Moreover, the fact that the court may have granted an attachment or any other motion in error is not, in and of itself, a basis for recusal. The evidence fails to support Brooks' claim that the court knew that exigent circumstances to support an *ex parte* attachment did not exist. The settlement agreement Brooks refers to was never signed by Justice Sullivan. Rather, the court only entered docket markings agreed to by the parties. In the court's order on Brooks' motion to recuse, Justice Sullivan stated that he never reviewed the settlement agreement. Brooks has failed to show the existence of bias, the likelihood of bias, or an appearance of such bias in this case. *Id.* Accordingly, we conclude that the superior court properly denied both the motion to recuse and the motion for change of venue.

> *Affirmed in part; reversed in part; and remanded.*

DALIANIS, J., concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, concurred.