# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2024-0075, <u>In the Matter of Anne Morse and Frank Morse</u>, the court on April 8, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(3).  The petitioner, Anne Morse, and the respondent, Frank Morse, stipulated to a final divorce decree on April 14, 2022.  The decree and incorporated property settlement required Frank to pay Anne $850,000.  The funds for that payment were to have originated from Frank receiving a subdivision loan on property the parties owned in New Hampshire.  Frank failed to make full payment to Anne.  Anne filed four motions for contempt over the course of ten months for failing to pay the property settlement.  The Circuit Court (<u>Garner</u>, J.) found Frank in contempt and awarded Anne, among other things, the New Hampshire property outright.  Frank appeals.  We affirm.

I.  <u>Background</u>

The following facts are supported by the record.  Frank and Anne were married for thirty-four years.  During their marriage, Frank owned and operated an excavation business.  Anne worked with Frank in the business.  In April 2022, the parties, by agreement, stipulated to a final divorce decree.  The decree incorporated a property settlement, which awarded one lot and the house in New Hampshire to Anne, the rest of the New Hampshire land and a Massachusetts home to Frank, and required Frank to pay Anne $850,000.  Frank and Anne had originally intended to subdivide the New Hampshire land into smaller lots to sell to developers.

The property settlement required Frank, among other things, to pay Anne $850,000 in payments between April 2022 and January 2025.  The first $50,000 was to be paid on a graduated schedule through July 1, 2022.  The next $550,000 was due by September 1, 2022.  The settlement stated that "Frank shall make a due diligent effort to transfer funds as soon as possible."  The next $200,000 was to be paid by March 1, 2024.  The remaining $50,000 was to be paid by January 1, 2025.  Anne was also to receive a lien against the Massachusetts property securing payment of the final $250,000.  The settlement required Anne to sign quitclaim deeds to the parties' properties and to vacate the Massachusetts house after Frank paid the first $600,000.

The trial court found that the underlying assumption of the property settlement was that Frank would be able to mortgage parts of the New Hampshire property to obtain the monies necessary to pay Anne. The record reflects that there was no other source for this money in the marital estate.

Frank paid Anne $50,000 in three payments between April 2022 and July 2022 as required by the property settlement. He failed to make the required $550,000 payment by September 1, 2022. Anne subsequently filed a motion for contempt against Frank. The court "reserved" a finding of contempt, required Frank to pay $25,000 "forthwith," and scheduled a hearing for October 2022.

Based on Frank's continued failure to pay the $550,000 and the newly ordered $25,000, Anne filed a second motion for contempt on October 3, 2022. After a hearing, the trial court issued an order on November 1, extending Frank's deadline to pay the $550,000 "for a period of nine months" because in order to receive loan approval, Frank needed "deeded title to the property for a period of six months." The trial court further ordered that "[Frank] will provide [Anne] a written confirmation from the lender that the loan is approved," and that "[u]pon such proof," Frank would have nine months to provide the $550,000 payment to Anne.

In January 2023, Anne filed her third motion for contempt because Frank had failed to provide "written and signed confirmation from the lenders that the loan was approved or proof of the loan and its terms." Anne also requested attorney's fees for the three contempt motions.

In May, the parties agreed that Frank would remove Anne's name from the Massachusetts home's mortgage obligation and that the parties "shall proceed to close on the loan" in order to pay Anne $550,000, plus interest. The agreement also gave Anne liens on the Massachusetts and New Hampshire properties to account for the remaining $250,000 owed by Frank.

The court approved the stipulated agreement. In June 2023, the court granted Anne's third motion for contempt and ordered Frank to pay Anne $7,500 in attorney's fees.

In June 2023, Anne filed her fourth motion for contempt based on Frank's failures to comply with the previous orders, to provide proof of the loan approval, and to pay the attorney's fees. The motion alleged that Frank's co-signer had "backed out," Frank had "no other co-signer," he "was denied all financing," and the loan "process had failed." Anne requested that the marital property be "liquidated" and distributed so that she "receive the full property settlement payment, minus any payments [Frank] made." Anne asserted that any further delay in receiving funds was "highly prejudicial" to her. In

response to this motion, the court scheduled a hearing and instructed the parties to file "proposed orders and exchange financial affidavits."

Following a hearing on October 25, the trial court issued an interim order and a final narrative order. The interim order explained that Frank had not paid the attorney's fees of $7,500 and again ordered him to do so. The court acknowledged that although Frank had been making monthly $1,500 payments to Anne, she could not provide for her own needs. The trial court's final order explained that "[a]lthough the Court earlier found that the payment of $550,000 was not strictly contingent on completion of the subdivision, the Court also found that there was no other source of funds within the marital estate." The court stated that because the "subdivision is not now likely to occur . . . the parties' agreement has been frustrated and is not now capable of performance." The trial court concluded that "[f]indings of contempt are mandated by [Frank's] failure to make payments toward both the property settlement and [Anne's] attorney's fees despite having funds available." The court ordered that Anne receive the New Hampshire property and Frank receive the Massachusetts property. The order also required: (1) that Frank pay the mortgage and property taxes on the New Hampshire property until it was transferred to Anne; (2) that Frank pay statutory interest on the $550,000 amount from previous orders; and (3) that Anne's lien on the Massachusetts property in the amount of $100,000 remain in place until the payments were completed.

The court also issued a Uniform Alimony Order requiring that Frank "continue to pay $1,500 per month ongoing, and for a period of three years after title to the properties are transferred to the parties." Frank moved for reconsideration, in part seeking clarification of the trial court's order. The trial court clarified Frank's payment obligation and otherwise denied the motion. This appeal followed.

II.    Analysis

On appeal, Frank argues that the trial court erred by: (1) "awarding alimony to the petitioner that is substantially in excess of the statutory formulas without finding that respondent has the ability to pay"; (2) "modifying the property settlement in the stipulated April 14, 2022 final decree"; and (3) awarding "petitioner a windfall of a substantially larger portion of the marital assets." (Bolding and capitalization omitted.) We address these arguments in turn.

Frank argues that the trial court erred in awarding alimony to Anne and that the trial court may order term alimony only "if it finds that the payor has the ability to pay to meet his own needs while also meeting Petitioner's needs" under RSA 458:19-a (Supp. 2024).

3

It is a long-standing rule that parties may not have judicial review of matters not raised in the forum of trial. Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). The purpose of our preservation rule is to ensure that trial courts have an opportunity to correct errors and come to sound conclusions before parties seek appellate review. O'Malley-Joyce v. Travelers Home & Marine Ins. Co., 175 N.H. 245, 249 (2022). At no point did Frank raise the issue of alimony before the trial court. Even though Anne requested alimony as part of her proposed orders, Frank did not discuss that proposal at the October 2023 hearing. After the court ordered term alimony for three years, Frank did not challenge in his motion for reconsideration whether the trial court properly granted alimony. Instead, he simply sought clarification about "whether the Respondent must pay $1,500 per month going forward and/or $2,000 per month going forward." Doing so was insufficient to preserve Frank's challenge to the court's alimony order on appeal. See N.H. Dep't of Corrections v. Butland, 147 N.H. 676, 679 (2002) (explaining that if a party could not have been expected to raise an issue prior to the court's ruling, then the party must raise the issue in a motion to reconsider). Because the argument is unpreserved, we decline to address it. See McDonough v. McDonough, 169 N.H. 537, 545 (2016).

Frank next argues that the trial court erred by "modifying the property settlement" of the parties' final divorce decree. (Bolding and capitalization omitted.) We disagree with the premise of this argument. The trial court's order was not a modification of the property settlement. The trial court explained that the "parties' agreement has been frustrated and is now not capable of performance," and ordered Anne to receive the New Hampshire property. The trial court's purpose was to effectuate and implement the terms of the property settlement. See Spellman v. Spellman, 136 N.H. 235, 238 (1992). In Spellman, we stated that when parties "have failed to effect the terms of a property settlement, and the terms of the decree material to that settlement must be interpreted and implemented by further order of the court, it is appropriate that the court take a second equitable look to determine what order would carry out the original equitable mandate." Id. Likewise, the trial court here determined that it was necessary to order a distribution of the property in order to carry out the equitable mandate of the original property settlement.

Frank also argues that the trial court erred because its order resulted in Anne receiving a "windfall of a substantially larger portion of the marital assets." (Bolding and capitalization omitted.) As the appealing party, Frank has the burden to provide this court with a record that demonstrates that the trial court erred with regard to the valuation of the properties. See Bean, 151 N.H. at 250. Frank submitted a 2021 "Comparative Market Analysis" (CMA) purporting to value the New Hampshire property. That value, however, was dependent on the land being subdivided and sold as separate lots. The trial court found that the subdivision "is now not likely to occur." Therefore, the

4

trial court did not credit the CMA report in making its determination. Additionally, the trial court was not requested by the parties to make findings of fact on the issue of property valuation, either at the time of the original settlement or after its final order.  See Davis v. American Plastics, 108 N.H. 454, 455 (1968).  The trial court concluded that the transfer of property and "other payments required" will "achieve the property settlement."  Without more, we cannot conclude that the trial court unsustainably exercised its discretion in implementing the property settlement.

Affirmed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**