# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3820

_____

| | | |
|---|---|---|
| Ladco Properties XVII, | * | |
| | * | |
| Plaintiff - Appellant, | * | Appeal from the United States |
| | * | District Court for the Southern |
| v. | * | District of Iowa. |
| | * | |
| Jefferson-Pilot Life Insurance | * | |
| Company, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: June 13, 2008
Filed: June 26, 2008

_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Ladco Properties XVII (Ladco), filed this action seeking recovery of its liquidated damages deposit which Jefferson-Pilot Life Insurance Company (Jefferson-Pilot) retained after Ladco failed to meet its obligations under the parties' loan commitment agreement. The parties filed cross motions for summary judgment and the district court[1] concluded that Jefferson-Pilot was entitled to retain the deposit

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

amount because the liquidated damages provision was valid and enforceable. Ladco appeals from the adverse judgment. We affirm.

Ladco, an Iowa limited liability corporation, joined with Mercy Medical Center in 2002 to develop the Mercy North medical office facility in Ankeny, Iowa. In 2004 Ladco retained a mortgage broker to assist it in obtaining sources of permanent financing for the development. The broker presented Ladco with loan proposals from three competing lenders including Jefferson-Pilot. Ladco applied and was approved for a $12,590,000 loan from Jefferson-Pilot to be funded under the terms of a loan commitment agreement which the parties entered into on January 14, 2005.

The terms of the agreement, which is governed by North Carolina law, obligated Jefferson-Pilot to fund the loan if Ladco satisfied certain conditions precedent prior to expiration of the loan commitment period. Before signing the agreement, Ladco's attorney reviewed it and Ladco negotiated several of its terms, including some terms within the deposit provision, which states,

> Upon acceptance of this Loan Commitment, Ladco shall pay Jefferson-Pilot a deposit in the amount of $377,000 [3% of the loan amount]. . . . In the event that the Loan does not close by the Expiration Date (except solely through the wrongful failure of Jefferson-Pilot to fund the Loan), the Deposit will be forfeited as liquidated damages and becomes the sole property of Jefferson-Pilot and will be considered earned in payment for [loan preparation and reservation of funds necessary to close the Loan]. **It is understood and agreed** that an actual determination of Jefferson-Pilot's expenses is not feasible and **that the Deposit represents a reasonable estimate of such costs and expenses**. (Emphasis added.)

Ladco breached the loan commitment agreement by failing to meet its obligations thereunder prior to expiration of the commitment period, after which Jefferson-Pilot retained the $377,000 deposit as liquidated damages according to the terms of the agreement.

Ladco's complaint alleged that the liquidated damages deposit amounted to an unenforceable penalty because 3% of the loan amount was not a reasonable estimate of Jefferson-Pilot's probable damages.  The parties filed cross motions for summary judgment, and the district court granted Jefferson-Pilot's motion because a 3% liquidated damages amount fell within the industry standard and was comparable to the other two loan offers, Ladco had agreed in the liquidated damages deposit provision that 3% was reasonable, and the parties are sophisticated, experienced business entities who exercised equal bargaining power.

We review de novo a district court's grant of summary judgment, viewing the record in the light most favorable to the nonmovant.  Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC, 519 F.3d 466, 471 (8th Cir. 2008).  Summary judgment is proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Id.  A liquidated damages provision is used to discourage a party from breaching a contract and to avoid later controversy over the amount of actual damages resulting from a breach.  See Knutton v. Cofield, 160 S.E.2d 29, 34 (N.C. 1968).  Such a provision is valid if the liquidated damages amount represents an estimate of actual damages likely to result from the breach; if instead it represents a fixed amount designed solely to punish a party for a breach, it amounts to an unenforceable penalty.  See id. at 36-37.  The party seeking to invalidate the liquidated damages provision has the burden of showing that it amounts to an unenforceable penalty.  Seven Seventeen HB Charlotte Corp. v. Shrine Bowl of the Carolinas, Inc., 641 S.E.2d 711, 714 (N.C. App. 2007).

Under North Carolina law, a liquidated damages provision is enforceable and will not be considered a penalty where (1) damages are speculative or difficult to ascertain, and (2) the amount stipulated is a reasonable estimate of probable damages or the amount stipulated is reasonably proportionate to the damages actually caused by the breach.  Knutton, 160 S.E.2d at 34.  On appeal Ladco does not dispute that the damages were speculative or difficult to ascertain under the first factor, but argues that

the provision fails the second because the amount stipulated was neither a reasonable estimate of probable damages nor reasonably proportionate to the damages actually caused by the breach.

Regarding the reasonableness of the estimate, Ladco urges us to ignore its acknowledgment in the deposit provision that "the Deposit represents a reasonable estimate" of actual damages. Ladco claims that the clause was mere boilerplate even though its attorney reviewed the agreement and it had negotiated several of the terms itself. Ladco argues that estimating the liquidated damages deposit at 3% of the loan amount was not reasonable, suggesting that Jefferson-Pilot was required to make a good faith effort to estimate actual damages by calculating estimated administrative costs, any potential loss due to a fluctuation in interest rates, and other factors. Jefferson-Pilot counters that no such requirement to estimate actual damages exists under North Carolina law, that a 3% deposit is within the 2-4% industry standard, that Ladco explicitly agreed in the deposit provision that the amount was reasonable, and that requiring it to perform the detailed calculations Ladco requests would vitiate the benefits liquidated damages provisions were created to provide.

The evidence in the record supports the district court's conclusion that a 3% liquidated damages deposit is reasonable in part because it falls within industry standards. Jefferson-Pilot's expert stated that the industry average for a liquidated damages deposit is 2% to 4% of the loan amount. Ladco's professional mortgage banker stated by affidavit that of the three loan offers he presented to Ladco, two requested a liquidated damages deposit of 3% and one requested 2%, and that these percentages are "not unusual" for a forward loan commitment of this type. Ladco's argument that Jefferson-Pilot was required to perform a calculation involving expected administrative costs and predicted interest rate fluctuations does not comport with industry standards and no case has been found where a party was required to perform such a calculation.

The record also supports the district court's conclusion that the liquidated damages amount was reasonable because it was freely negotiated by sophisticated businesses, neither of which exerted superior bargaining power over the other. North Carolina courts have recognized that parties are free to negotiate any reasonable amount of liquidated damages, and that reasonableness is supported by findings that the parties are experienced with this type of transaction and exercised equal bargaining power in the negotiation. See Coastal Leasing Corp. v. T-Bar S Corp., 496 S.E.2d 795, 798-99 (N.C. App. 1998) (no genuine issue of material fact existed as to reasonableness of liquidated damages clause where negotiated by experienced parties with equal bargaining power and where clause protected party's expectation interest). It is undisputed that these were sophisticated parties with commercial real estate experience, and there is no evidence in the record that Jefferson-Pilot exercised superior bargaining power over Ladco in negotiating the loan commitment agreement. Ladco is managed by a large commercial real estate development company, and this near $13 million loan commitment was characterized as a "fairly large deal" for Jefferson-Pilot. Ladco retained the services of a professional mortgage banker who identified three potential lenders and negotiated on its behalf, and it hired an attorney to review the loan commitment agreement before signing it.

The undisputed facts show that these sophisticated business entities stipulated to a liquidated damages deposit amount which fell within the industry standards and the common law requirements for reasonableness. The district court did not err in concluding that the liquidated damages provision was valid and enforceable.

For these reasons we affirm the judgment of the district court.

_____