Manchester District Court
No. 2010-563

HOLLOWAY AUTOMOTIVE GROUP D/B/A HOLLOWAY MOTOR CARS OF MANCHESTER

v.

GORAN LUCIC & a.

Argued: September 15, 2011
Opinion Issued: December 14, 2011

*Coughlin, Rainboth, Murphy & Lown, P.A.*, of Portsmouth (*Bradley M. Lown* on the brief and orally), for the plaintiff.

*Sherman Law, PLLC*, of Portsmouth (*John P. Sherman* on the brief and orally), for the defendants.

DALIANIS, C.J. The defendants, Sedo, Inc. (the corporation) and its founder, president and sole shareholder, Goran Lucic, appeal an order of the Manchester District Court (*DeVries*, J.) ruling that both the corporation and Lucic are liable to the plaintiff, Holloway Automotive Group d/b/a Holloway Motor Cars of Manchester (Holloway), for breach of contract. We

affirm the trial court's enforcement of a liquidated damages provision in the parties' contract, but conclude that the district court lacked equitable jurisdiction to pierce the corporate veil. Therefore, we vacate the award against Lucic as well as the award of attorney's fees, and remand.

*I. Background*

The trial court could have found the following facts. Holloway is an authorized dealer of Mercedes-Benz North America (Mercedes-Benz). Mercedes-Benz prohibits Holloway "from exporting new Mercedes-Benz vehicles outside the exclusive sales territory of North America" and "assess[es] charges against [Holloway] for each new Mercedes-Benz vehicle it sells or leases which is exported from North America within one (1) year." Thus, export of a vehicle that Holloway sells, even when Holloway neither knows of nor consents to the export, subjects Holloway to certain penalties and fees. Holloway requires customers to enter into a no-export agreement to minimize Holloway's export-penalty exposure.

In May 2008, Lucic, on behalf of the corporation, paid $99,000 for two Holloway vehicles and signed two identical agreements promising "not [to] export the [v]ehicles[s] outside North America . . . for a period of one (1) year." Each agreement also provided that if the vehicle was exported within a year, "regardless of whether the [corporation] or any other party actually cause[d] the export of the [v]ehicle," the corporation would pay Holloway $7,500 as liquidated damages. In the event of a breach, each agreement made the corporation liable for the reasonable attorney's fees Holloway incurred to enforce it. Lucic assured Holloway that he had no interest in exporting because he planned to lend the vehicles to contractors working for him on a Massachusetts consulting project. Satisfied with these assurances, Holloway delivered the vehicles.

Less than two weeks later, both vehicles were exported. As a result, Holloway sued the corporation and Lucic, individually as its alter ego, seeking $7,500 liquidated damages plus attorney's fees for each vehicle. The defendants argued that the liquidated damages clause was unenforceable because the only penalty Mercedes-Benz actually assessed against Holloway was a $300 per vehicle administrative fee. This fee, the defendants contended, was grossly disproportionate to the $7,500 per-vehicle liquidated sum, making the damages provision an unenforceable penalty.

Holloway presented evidence that its contractual relationship with Mercedes-Benz required it to pay a commission if a foreign dealer discovered the exported vehicles in its sales territory. Although, at the time of trial, no foreign dealer had sought to collect any commission, the dealers had the right to do so at any time. The defendants did not introduce

evidence concerning the amount of Holloway's potential liability under the commission provision or the likelihood that Holloway would have to pay a foreign dealer.

The district court found that the corporation had breached the no-export agreements and enforced the liquidated damages provisions; it also pierced the corporate veil to hold Lucic personally liable for the breaches. The defendants contend that the district court erred in finding that: (1) the liquidated damages provisions of the agreements are enforceable; (2) it had jurisdiction to pierce the corporate veil; and (3) an award of attorney's fees to Holloway was proper.

## II. Liquidated Damages

Each liquidated damages clause at issue states:

> THE PARTIES AGREE THAT IT WOULD BE IMPRACTICAL OR DIFFICULT TO FIX THE ACTUAL DAMAGES TO [HOLLOWAY] IF THE VEHICLE IS EXPORTED OUT OF NORTH AMERICA. THEREFORE, IF THE VEHICLE IS EXPORTED OUTSIDE NORTH AMERICA WITHIN ONE[] YEAR OF THE DATE OF THIS AGREEMENT, THE UNDERSIGNED SHALL BE OBLIGATED TO PAY [HOLLOWAY] THE SUM OF SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500.00) AS LIQUIDATED DAMAGES. . . .

(Emphasis omitted.) The defendants argue that this provision is an unenforceable penalty because Holloway suffered only *de minimis* damages as a result of the breach.

■ "The central objective behind the system of contract remedies is compensatory, not punitive." RESTATEMENT (SECOND) OF CONTRACTS § 356 comment *a* at 157 (1981). As a result, liquidated damages so disproportionate to the actual damage a breach will likely cause that they "coerce performance of the underlying agreement by penalizing non-performance and making a breach prohibitively and unreasonably costly" are void. 24 R. LORD, WILLISTON ON CONTRACTS § 65:1, at 223 (4th ed. 2002). On the other hand, because "the possibility of a damage award . . . by its nature . . . induce[s] performance," the mere fact that a liquidated damages provision encourages a party to perform, rather than to breach, does not make it a penalty. *Id.* at 231.

■ Three criteria distinguish a valid liquidated damages clause from an unenforceable penalty. In a valid clause: (1) the damages anticipated as a

result of the breach are uncertain in amount or difficult to prove; (2) the parties intended to liquidate damages in advance; and (3) the amount agreed upon is reasonable and not greatly disproportionate to the presumable loss or injury. *Orr v. Goodwin*, 157 N.H. 511, 514 (2008). Here, the parties agree that the liquidated damages provision meets the first two criteria; thus, we limit our analysis to the third criterion — the reasonableness of the agreed amount.

■ We employ a two-part test to determine whether a liquidated sum is reasonable. First, we assess whether the amount "was a reasonable *estimate* of difficult-to-ascertain damages at the time the parties agreed to it." *Shallow Brook Assoc's v. Dube*, 135 N.H. 40, 48 (1991) (quotation omitted). Next, we ask whether actual damages are "easily ascertainable" after a breach. *See id.* at 49 (quotation omitted). "[I]f the actual damages turn out to be easily ascertainable, we must then consider whether the stipulated sum is unreasonable and grossly disproportionate to the actual damages from a breach." *Orr*, 157 N.H. at 515. If the stipulated sum is grossly disproportionate to easily ascertainable, actual damages, the provision is an unenforceable penalty, and the aggrieved party will be awarded no more than the actual damages. *Id.*

■ The defendants, as the parties alleging that the liquidated amount is unreasonable, bear the burden of proof. *Id.* On appeal, we determine whether a reasonable person could have arrived at the same determination as the trial court, based upon the evidence, and we will not upset the trial court's finding as long as it is substantiated by the record and is not erroneous as a matter of law. *Id.*

Because there is no argument to the contrary, we conclude that the liquidated sum here was a reasonable estimate at the time the parties executed the agreements and proceed to the next step, which is a "retrospective appraisal" to determine whether the parties' initial expectations conform to reality after the breach. *Id.* at 515-16. Holloway's only out-of-pocket damages to date are a $300 per vehicle administrative fee that Mercedes-Benz assessed. Holloway argues, however, that it faces "ongoing[,] potential damages" as a result of the defendants' breach and that these potential damages make its actual damages difficult to ascertain.

■ We agree that the possibility of speculative, future damages rendered Holloway's actual damages difficult to ascertain. Parties employ liquidated damages clauses "to avoid later controversy over the amount of actual damages resulting from a breach" when "damages are speculative or difficult to ascertain." *Ladco Properties XVII v. Jefferson-Pilot Life Ins.*, 531 F.3d 718, 720 (8th Cir. 2008). Our retrospective appraisal simply

acknowledges that, although pre-breach damages may have been speculative, occasionally the damages after a breach are certain. *See Orr*, 157 N.H. at 515. In such a case, enforcing a clause that, in reality, is clearly and grossly disproportionate to the actual loss effectively penalizes the party in breach.

As a result, only "easily ascertainable" damages, meaning damages that are no longer speculative at the time of trial, trigger the retrospective appraisal. If, at the time of trial, damages remain speculative or difficult to ascertain, "the estimate of the court or jury may not accord with the principle of compensation any more than does the advance estimate of the parties." RESTATEMENT (SECOND) OF CONTRACTS, *supra* § 356 comment *b* at 158. When faced with the very uncertainty the parties initially sought to avoid, a court should fix damages at the figure to which the parties initially agreed and enforce the liquidated amount.

The defendants argue that it was Holloway's burden to show that its actual damages were reasonably certain and that Holloway failed to meet this burden because its damages remained speculative at trial. *Cf. Witte v. Desmarais*, 136 N.H. 178, 188 (1992). This argument misapprehends our liquidated damages rules. The burden was not upon Holloway to show that future damages were reasonably certain. Rather, it was incumbent upon the defendants, the parties seeking to invalidate the clause, to prove that Holloway's damages were easily ascertainable and grossly disproportionate to the liquidated sum. *Orr*, 157 N.H. at 515. The defendants do not argue that they satisfied this burden, and, therefore, we affirm the trial court's enforcement of the liquidated damages clause against the corporation.

*III. Piercing the Corporate Veil*

The parties dispute whether the district court had jurisdiction to pierce the corporate veil and hold Lucic personally liable for the corporation's breach. Before turning to the merits of this issue, we address Holloway's argument that the defendants waived any objection to the district court's subject matter jurisdiction by not objecting at trial. To the contrary, "the issue of subject matter jurisdiction may be raised at any time in the proceedings because jurisdiction cannot be conferred where it does not already exist." *Route 12 Books & Video v. Town of Troy*, 149 N.H. 569, 575 (2003).

As to the merits, "[t]he doctrine of piercing the corporate veil is an equitable remedy," and neither party contends otherwise. *LaMontagne Builders v. Bowman Brook Purchase Group*, 150 N.H. 270, 274 (2003) (quotation omitted). We have noted on several occasions that the district

court lacks general equitable power. *See, e.g., Matte v. Shippee,* 152 N.H. 216, 223 (2005). "The ultimate determination as to whether the trial court ha[d] jurisdiction in this case is a question of law subject to *de novo* review." *In the Matter of O'Neil & O'Neil,* 159 N.H. 615, 622 (2010).

Holloway first contends the district court does, in fact, have general equitable power. It argues that because the district court and superior court have concurrent jurisdiction in civil cases with less than $25,000 in damages, the two courts necessarily have concurrent powers to fashion general equitable remedies in these cases. *See* RSA 498:1 (2010); RSA 502-A:14, II (2010). This argument conflates jurisdiction to hear a case with the power to grant a remedy. Contrary to Holloway's assertions, whatever the district court's jurisdiction, it has no general power to grant an equitable remedy such as piercing the corporate veil.

Next, Holloway argues that, by piercing the corporate veil, the trial court properly exercised its inherent power to sanction Lucic for testifying falsely. *See State v. Martina,* 135 N.H. 111, 115-16 (1991). We reject this argument because piercing the corporate veil is not a sanction at all; it is an "equitable remedy." *LaMontagne Builders,* 150 N.H. at 274 (quotation omitted). Moreover, as its order makes clear, the trial court pierced the veil because it determined Lucic used the corporate identity to "promote an injustice or fraud upon [Holloway]." This "fraud" occurred not in the courtroom at trial, but in Holloway's showroom months earlier.

Similarly, we reject Holloway's argument that the district court held Lucic individually liable without piercing the corporate veil. The corporation, not Lucic as an individual, purchased the vehicles and entered into the no-export agreements, and the trial court's order explains that the veil-piercing doctrine justified Lucic's personal liability. Thus, the only basis for Lucic's individual liability was the one the district court cited — piercing the corporate veil. Because the district court lacked jurisdiction to grant this remedy, we vacate its order holding Lucic personally liable.

Finally, although Holloway asserts the district court's findings are res judicata in Holloway's pending superior court action to pierce the corporate veil, we decline to consider this argument as the issue is not properly before us.

*IV. Attorney's Fees*

The defendants argue that the trial court unsustainably exercised its discretion by awarding Holloway's attorney's fees. We review a trial court's award of attorney's fees under an unsustainable exercise of discretion standard, and if there is some support in the record for the trial court's determination, we will uphold it. *LaMontagne Builders v. Brooks,* 154 N.H.

252, 261-62 (2006). Where a party prevails upon some claims but not others, and the successful and unsuccessful claims are analytically severable, any fee award should be reduced to exclude time spent on unsuccessful claims. *Id.* at 261.

Here, although Holloway prevailed against the corporation, Holloway did not prevail against Lucic individually. Therefore, we vacate the current fee award and remand to the trial court to determine whether the veil-piercing and breach of contract claims are "analytically severable" and, if so, the amount by which the trial court must reduce its initial fee award. *See id.* Only the corporation will be liable for any attorney's fees.

> *Affirmed in part; vacated in part; and remanded.*

DUGGAN, HICKS, CONBOY and LYNN, JJ., concurred.