NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Manchester District Division
No. 2016-0141


HOLLOWAY AUTOMOTIVE GROUP

v.

STEVEN GIACALONE

Argued: November 17, 2016
Opinion Issued: February 15, 2017

Coughlin, Rainboth, Murphy & Lown, P.A., of Portsmouth (Bradley M. Lown on the brief and orally), for the plaintiff.

Gallagher, Callahan & Gartrell, Professional Corporation, of Concord (R. Matthew Cairns and Lisa M. Lee on the brief, and Mr. Cairns orally), for the defendant.

DALIANIS, C.J. The plaintiff, Holloway Automotive Group (Holloway), appeals the order of the Circuit Court (Michael, J.) ruling that the liquidated damages clause contained in the parties' contract is unenforceable. We reverse and remand.

The relevant facts follow. Holloway is an authorized franchise dealer of Mercedes-Benz North America, Inc. (MBUSA), with a principal place of business

in Manchester. On November 15, 2014, the defendant, Steven Giacalone, purchased a new Mercedes-Benz automobile from Holloway for $71,630.

At the time of the purchase, the defendant signed an "AGREEMENT NOT TO EXPORT" (the Agreement). (Bolding and underlining omitted.) The Agreement stated that "MBUSA prohibits its authorized dealers from exporting new Mercedes-Benz vehicles outside of the exclusive sales territory of North America and will assess charges against [Holloway] for each new Mercedes-Benz vehicle it sells . . . which is exported from North America within one (1) year." Therefore, the defendant promised "not [to] export the Vehicle outside North America . . . for a period of one (1) year" from the date of the Agreement and, if he did so, to pay Holloway $15,000 as liquidated damages.

The vehicle was subsequently exported within the one-year period. Holloway sued the defendant, claiming breach of contract and misrepresentation and seeking liquidated damages in the amount of $15,000, plus interest, costs, and attorney's fees.

The trial court held a hearing on the merits at which Holloway acknowledged that MBUSA had not assessed any charges against it due to the vehicle's export. Nonetheless, Holloway made an offer of proof, itemizing the damages it may suffer due to the export of the vehicle by a customer. These damages include loss of income from maintaining and servicing the vehicle, future sales of additional vehicles, warranty work, resale income, financing income, and detriment to the rating and ranking of the dealership.

With the trial court's permission, Holloway submitted a post-trial supplemental memorandum of law to which it attached its responses to the defendant's interrogatories itemizing its potential losses over three years as: $4,800 in lost income from servicing the vehicle; lost "referral business, service income, aftersales of vehicles or products or warranty extensions, [and] potential resale income"; $1,969 in lost finance income; $3,060 in lost lease income; $300 in payment by Mercedes-Benz "as compensation for reduced risk due to automatic withdrawal"; and $5,955 in lost profit "on various products and services."

The trial court found that the Agreement was entered into "between the parties to protect [Holloway] from a claim by [MBUSA]," but that MBUSA did not, in fact, charge Holloway any fees despite the vehicle having been exported. In addition, the court found that

> the amount of $15,000.00 was a 'guesstimate' of difficult-to-ascertain damage at the time the parties agreed to it. . . . In this instance, [Holloway] suggests that the vehicle might return for maintenance, that there may be further customer sales, that the plaintiff may need warranty work on a vehicle (this is speculative,

especially since the liquidated damage agreement is only in force for one year and this is a new vehicle), and the <u>potential</u> resale income if the car is traded. . . . It is difficult to see how maintenance on a new vehicle, perhaps a couple of oil changes, further sales and warranty work on a new vehicle, as well as potential resale income, would be anywhere near $15,000.00, because of the one year contract time frame.

The court reasoned that "the one year contract period" had passed, "[i]n retrospect there were no fees charged by [MBUSA]," and "[o]ther than wild guesses there [was] certainly no indication of any of the damages associated with the breach." Thus, because the "actual losses to [Holloway] during the one-year period were essentially zero," the trial court declined to enforce the liquidated damages clause in the Agreement. Holloway unsuccessfully sought reconsideration, and this appeal followed.

I.  Liquidated Damages

We first address Holloway's argument that the trial court erred when it found the liquidated damages provision unenforceable. "[O]ur function on appeal is to determine whether a reasonable person could have arrived at the same determination as the trial court, based on the evidence, and we will not upset the trial court's finding as long as it is substantiated by the record and is not erroneous as a matter of law." <u>Orr v. Goodwin</u>, 157 N.H. 511, 515 (2008) (quotation omitted).

A valid liquidated damages provision must meet three criteria: "(1) the damages anticipated as a result of the breach are uncertain in amount or difficult to prove; (2) the parties intended to liquidate damages in advance; and (3) the amount agreed upon must be reasonable and not greatly disproportionate to the presumable loss or injury." <u>Id</u>. at 514. Failure to meet any of the three criteria will result in the provision being unenforceable as a penalty. See <u>Technical Aid Corp. v. Allen</u>, 134 N.H. 1, 22 (1991). The trial court found that the first two criteria were met, and the parties do not challenge these findings on appeal.

The third criterion of a valid liquidated damages clause requires "that the amount stipulated was a reasonable one, that is to say, not greatly disproportionate to the presumable loss or injury." <u>Shallow Brook Assoc's v. Dube</u>, 135 N.H. 40, 46 (1991) (quotation omitted). "[W]e have adopted a two-part test for assessing the reasonableness of the amount stipulated whereby we first judge whether the provision was a reasonable estimate of difficult-to-ascertain damage at the time the parties agreed to it." <u>Orr</u>, 157 N.H. at 515 (quotation and emphasis omitted). "If it is a reasonable estimate, we must then conduct a retrospective appraisal of the liquidated damages provision, and if the actual damages turn out to be easily ascertainable, we must then consider

3

whether the stipulated sum is unreasonable and grossly disproportionate to the actual damages from a breach." Id. "If so, the liquidated damages provision will be deemed unenforceable as a penalty, and the aggrieved party will be awarded no more than the actual damages." Id. "Thus, even if the liquidated sum is reasonable in light of the anticipated or presumable loss, the provision will not be enforced if the actual loss to the party is minimal and easy to prove." Id. (quotation omitted).

The parties do not contend that the liquidated sum of $15,000 was an unreasonable estimate of difficult-to-ascertain damages at the time they agreed to it. Thus, the question before us is whether the actual damages turned out to be "easily ascertainable." See id. Holloway argues that the trial court erred when it found that the liquidated damages clause is unenforceable without first "expressly find[ing] in connection with the retrospective appraisal of damages that the damages were 'easy to prove' or were 'easily ascertainable,'" and that, in fact, the court "appeared to indicate . . . that such actual damages were . . . not easily ascertainable." Holloway also asserts that the trial court erred when it found that the only damages contemplated by the Agreement were the charges that might have been imposed by MBUSA.

The defendant counters that the trial court "correctly found that the damages were ascertainable" and, thus, "properly invalidated the liquidated damages clause" because the $15,000 liquidated damages amount is "unreasonable and greatly disproportionate." The defendant asserts that "the entire contract was premised" upon charges being imposed by MBUSA. Because those charges are prohibited by RSA 357-C:5, II(d)(8) (Supp. 2016), and because "there were no penalties assessed within [MBUSA's] one-year limit to do so," the defendant argues that the trial court correctly concluded that the damages were "easily ascertainable at zero." The defendant also argues that the trial court properly rejected Holloway's "other 'unascertainable' damages" because "there is nothing requiring [him] to have maintenance performed at Holloway's dealership," and "loss of financing damages are illusory because there was no financing here."

Interpretation of the parties' written agreement is a question of law, which we review de novo. Orr, 157 N.H. at 514. When interpreting a written agreement, we give the language used by the parties its reasonable meaning, reading the document as a whole, and considering the circumstances and the context in which the agreement was negotiated. Id. Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the agreement. Behrens v. S.P. Constr. Co., 153 N.H. 498, 503 (2006).

The Agreement states in pertinent part:

MBUSA prohibits its authorized dealers from exporting new Mercedes-Benz vehicles outside of the exclusive sales territory of

4

North America and will assess charges against [Holloway] for each new Mercedes-Benz vehicle it sells . . . which is exported from North America within one (1) year.

Therefore, in consideration of [Holloway] selling . . . a new Mercedes-Benz vehicle . . . , the undersigned purchaser . . . represents, warrants, and agrees as follows:

. . . .

4.  If the vehicle is exported outside of North America anytime within one (1) year of the date of this Agreement, . . . the Undersigned shall pay to [Holloway] liquidated damages described below . . . .

5.  THE PARTIES AGREE THAT IT WOULD BE IMPRACTICAL OR DIFFICULT TO FIX THE ACTUAL DAMAGES TO [HOLLOWAY] IF THE VEHICLE IS EXPORTED OUT OF NORTH AMERICA.  THEREFORE, IF THE VEHICLE IS EXPORTED OUTSIDE OF NORTH AMERICA WITHIN ONE-YEAR OF THE DATE OF THIS AGREEMENT, THE UNDERSIGNED SHALL BE OBLIGATED TO PAY [HOLLOWAY] THE SUM OF FIFTEEN THOUSAND DOLLARS ($15,000.00) AS LIQUIDATED DAMAGES . . . .

(Bolding omitted.)

Reading the document as a whole, we disagree with the defendant that the Agreement was intended to limit Holloway's damages only to charges imposed by MBUSA.  The plain language of the Agreement demonstrates that the parties contemplated that, in the event the vehicle was exported within the prohibited time frame, Holloway would face other actual damages that would be hard to calculate, and they agreed to stipulate to $15,000 as liquidation of all damages, including those hard-to-calculate damages.

We also disagree with the trial court's determination that the Agreement limited Holloway's actual damages to those incurred during the Agreement's one-year period.  Under the plain language of the Agreement, although the vehicle's export had to occur within one year in order to constitute a breach, there is nothing in the Agreement restricting Holloway's damages to that same one-year period.  In Holloway Automotive Group v. Lucic, 163 N.H. 6 (2011), we upheld a virtually identical liquidated damages provision against a claim that it constituted an unenforceable penalty because Holloway suffered only de minimus damages as a result of the breach.  Lucic, 163 N.H. at 9-11.  Because Holloway faced "the possibility of speculative, future damages" as a result of

the defendants' breach, we agreed that Holloway's actual damages were thereby rendered "difficult to ascertain."  Id. (emphasis added).

Similarly, Holloway argues here that at the time the defendant signed the Agreement it "faced many different losses that would likely result from" the vehicle's export.  Based upon sales to typical customers, those potential losses included lost income from "maintenance and service," "warranty work," and "reselling the vehicle," lost "future sales to the same customer," and lost "payments and interest income on financing."  Indeed, the trial court acknowledged at the hearing that Holloway's damages were "fairly speculative" and "difficult to put your finger on."  The trial court also acknowledged that "ordinarily people would tend to go back to the dealer for any work" and that it "doesn't make much sense" for the court to "disregard that."  It was not Holloway's burden to show that future damages were reasonably certain; rather, "it was incumbent upon the defendant[ ] . . . to prove that Holloway's damages were easily ascertainable."  Id. at 11.

"Our retrospective appraisal simply acknowledges that, although pre-breach damages may have been speculative, occasionally the damages after a breach are certain."  Id. at 10-11 (emphasis added).  As we explained in Lucic, "[p]arties employ liquidated damages clauses to avoid later controversy over the amount of actual damages resulting from a breach when damages are speculative or difficult to ascertain."  Id. at 10 (quotations omitted).  Thus, when damages remain speculative or difficult to ascertain at the time of trial, as they do here, "faced with the very uncertainty the parties initially sought to avoid, a court should fix damages at the figure to which the parties initially agreed and enforce the liquidated amount."  Id.  This is because "'the estimate of the court or jury may not accord with the principle of compensation any more than does the advance estimate of the parties.'"  Id. (quoting Restatement (Second) of Contracts § 356 cmt. b at 158 (1981)).

The parties agreed to liquidate damages in an amount representing a reasonable estimate of damages at the time they entered into the Agreement.  The defendant breached the Agreement and "cannot now complain because, as a result of [his] own calculated business actions, [he] is required to adhere to the terms of [his] bargain."  Realco Equities, Inc. v. John Hancock Mut. Life Ins. Co., 130 N.H. 345, 352 (1988).

Finally, the defendant argues that the trial court "made a correct finding that the damages were zero and therefore ascertainable" because MBUSA is prohibited by statute from imposing penalties upon Holloway for selling vehicles that are then exported.  See RSA 357-C:5, II(d)(8).  However, the statute precludes a franchisor such as MBUSA from taking or threatening to take adverse action against a dealer such as Holloway because of its customer's export of a vehicle only if the dealer neither knew nor reasonably should have known that the customer intended to export the vehicle.  See id.

6

Therefore, in any case in which a customer exports a vehicle, Holloway faces the risk that MBUSA will assert that Holloway knew or should have known that the export would occur, and will take adverse action against it on this basis. Holloway's potential expenses in defending against such a claim are sufficiently "impractical or difficult to fix" as to provide a proper basis to indemnify itself against this risk through utilization of the liquidated damages provision. Even at the time of trial, Holloway could still have faced a future claim from MBUSA that it bore some culpability for the export of the vehicle, and thus would have to incur uncertain damages to defend against such a claim.

For the reasons set forth above, we conclude that the $15,000 liquidated damages provision is enforceable because Holloway's damages resulting from the breach are not "easily ascertainable." Accordingly, we hold that the trial court's determination that the liquidated damages provision in the parties' Agreement is unenforceable is not supported by the record and is erroneous as a matter of law.

## II. Attorney's Fees

Holloway argues that it is entitled to its attorney's fees and costs as set forth in the Agreement. "An award of attorney's fees must be grounded upon statutory authorization, an agreement between the parties, or an established exception to the rule that each party is responsible for paying his or her own counsel fees." Merrimack School Dist. v. Nat'l School Bus Serv., 140 N.H. 9, 14 (1995) (quotation and ellipses omitted). Interpretation of the parties' written agreement is a question of law, which we review de novo. Orr, 157 N.H. at 514.

The Agreement states:

If [Holloway] is required to bring any action or lawsuit to enforce any provisions or rights under this agreement, [Holloway] shall be entitled to recover judgment against the Undersigned for the liquidated damages provided above plus all [Holloway's] costs and expenses of such action, including, but not limited to, reasonable attorneys' fees and court costs.

The plain meaning of the language used by the parties is that if Holloway prevails in an action brought to enforce the Agreement, it is entitled to attorney's fees and costs. Accordingly, we remand for a determination of the reasonable amount of attorney's fees and costs Holloway should receive from the defendant.

Reversed and remanded.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

7