**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0548, <u>In the Matter of Philip Wyzik and Lisa Hayward-Wyzik</u>, the court on June 15, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The respondent, Lisa Hayward-Wyzik, appeals the distribution of marital assets in a final order issued by the Circuit Court (<u>Yazinski</u>, J.) in her divorce from the petitioner, Philip Wyzik. <u>See</u> RSA 458:16-a (2004). She contends that the trial court erroneously defined the marital estate by: (1) "failing to include the full values of Petitioner's retirement accounts"; (2) "adopting an out-of-date real estate appraisal for the marital home"; (3) "reducing the value of the marital estate by . . . the debts each party has incurred to send their respective children (from their prior marriages) to college"; and (4) failing to "consider Petitioner's deliberate depletion of the marital estate." She further contends that the trial court erred by: (1) awarding a pet, for whose surgery she had paid, to the petitioner; and (2) "relying on statutory factors insufficiently supported by evidence and by failing to take into consideration factors for which credible evidence had been provided."

Marital property includes "all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties." RSA 458:16–a, I. The trial court first determines, as a matter of law, what assets are marital property under RSA 458:16–a, I, and thus subject to equitable distribution, and then exercises its discretion to make an equitable distribution of those assets under RSA 458:16-a, II. <u>In the Matter of Goodlander & Tamposi</u>, 161 N.H. 490, 495 (2011). Trial court determinations under RSA 458:16–a, I, are reviewed <u>de novo</u>, while equitable divisions of property pursuant to RSA 458:16–a, II are reviewed for an unsustainable exercise of discretion. <u>Id</u>.

In reviewing the trial court's distribution of marital property, our role is not to reweigh the equities in the case and divide the property accordingly. <u>In the Matter of Heinrich & Heinrich</u>, 164 N.H. 357, 365 (2012). "When we determine whether a ruling made by a judge is a proper exercise of judicial discretion, we are really deciding whether the record establishes an objective basis sufficient to

sustain the discretionary judgment made." State v. Lambert, 147 N.H. 295, 296 (2001). We will not disturb the trial court's determination if it could reasonably be made. Heinrich, 164 N.H. at 365.

"In a divorce proceeding, marital property is not to be divided by some mechanical formula but in a manner deemed 'just' based upon the evidence presented and the equities of the case." In the Matter of Sarvela & Sarvela, 154 N.H. 426, 431 (2006) (quotation omitted). The trial judge is in the best position to evaluate the evidence, measure its persuasiveness, and assess the credibility of witnesses. In the Matter of Salesky & Salesky, 157 N.H. 698, 708 (2008).

Pursuant to RSA 458:16-a, II, a trial court may determine that an equal division of marital property is not equitable after considering one or more statutory factors, including: "[t]he duration of the marriage," RSA 458:16-a, II(a); "[t]he age, . . . occupation, . . . employability,. . . [and] needs and liabilities of each party," RSA 458:16-a, II(b); "[t]he opportunity of each party for future acquisition of capital assets and income," RSA 458:16-a, II(c); "[t]he expectation of . . . retirement rights acquired prior to or during the marriage," RSA 458:16-a, II(i); "[t]he value of any property acquired prior to the marriage," RSA 458:16-a, II(m); and "[t]he value of any property acquired by gift," RSA 458:16-a, II(n). In addition, the court may consider "[a]ny other factor that [it] deems relevant" in equitably distributing the parties' assets. RSA 458:16-a, II(o); Heinrich, 164 N.H. at 364.

We first address the trial court's distribution of the petitioner's retirement accounts. The respondent argues that the trial court excluded the petitioner's pre-marital retirement savings from the marital estate. However, we interpret the trial court's order as including the petitioner's pre-marital retirement savings in the marital estate and awarding that portion of his retirement savings to the petitioner. See Salesky, 157 N.H. at 702 (stating interpretation of trial court order is question of law, which we review de novo). The trial court found that the petitioner was fifty-eight years old, that his "earning capacity and ability to acquire capital assets and income in the future" were limited, and that he "entered the marriage with an expectation that the retirement assets he accumulated prior to marriage would benefit him in his retirement." It granted the petitioner's requested finding of fact, listed under the heading "Marital Assets," that "[a]s of the date of the parties' marriage, [he] had retirement savings of $108,344.80." The trial court also adopted the petitioner's requested finding detailing the "Total Net Estate," which identified the value of the petitioner's retirement assets as "value at separation less pre-marital value."

The respondent argues that the trial court "used different methods for valuing the parties' respective . . . retirement accounts" by applying a "hybrid value" for the petitioner's account, which did not include his pre-marital retirements savings, while including "the balance of her accounts as of the date

2

of the parties' separation," which presumably included her pre-marital savings. However, we conclude that the trial court included all the petitioner's retirement assets in the marital estate and then awarded to him that portion of the petitioner's retirement assets attributable to his pre-marital savings. As a result, we conclude that the trial court did not "improperly appl[y] the 'Hodgins formula'" as the respondent contends. See In the Matter of Nyhan and Nyhan, 147 N.H. 768, 770 (2002) (stating IRA and 401(k) accounts not subject to Hodgins rule); cf. Hodgins v. Hodgins, 126 N.H. 711, 716 (1985) superseded on other grounds by statute, RSA 458:16–a, as recognized in Nyhan, 147 N.H. at 770 (identifying formula for equitably apportioning pension benefits when actual and contingent benefits not ascertainable).

The respondent argues that "[h]ad [the petitioner] wished the trial court to take into consideration the value of the parties' respective retirement accounts as of the date of the parties' marriage, it was incumbent upon him to obtain and supply this information [regarding her retirement accounts] to the court." However, the respondent knew that the petitioner had presented evidence of his pre-marital retirement assets and that the trial court might consider that evidence. If she wished the trial court to consider what portion of her retirement assets were accumulated before the marriage, we conclude that it was incumbent upon her to provide that information.

The respondent asserts, in a footnote, that "[t]here are mathematical discrepancies between the numbers shown in the exhibits, Petitioner's proposed Findings 9-13 and the summary of assets Petitioner provided to the court in proposed Finding 68, all granted by the court." To the extent that the respondent is challenging the order on the basis of the alleged mathematical discrepancies, the record does not show that she brought these errors to the trial court's attention. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) (holding parties may not have judicial review of issues they did not raise in trial court).

We next address the trial court's decision to accept the value placed upon the marital home by the 2011 appraisal instead of by the 2014 appraisal. The respondent notes that the trial court granted contradictory requests for findings regarding which appraisal represented the fair market value of the house. However, the record does not show that the respondent brought this conflict to the trial court's attention. See N.H. Dep't of Corrections v. Butland, 147 N.H. 676, 679 (2002) (holding any issues that could not have been presented to trial court prior to its decision must be presented to it in motion for reconsideration); Fam. Div. R. 1.26(F). Furthermore, the trial court's narrative order is clear. The respondent agrees that the trial court adopted the 2011 appraisal: the trial court found that the house had "equity of approximately $147,000," which presumes a fair market value of $307,000, the 2011 appraised value. Therefore, we conclude

that any grant of contradictory requests for findings is harmless error. See Place v. Place, 129 N.H. 252, 260 (1987) (holding inconsistent findings that do not affect outcome are harmless error).

The respondent argues that the trial court erred "by adopting an out-of-date real estate appraisal for the marital home." She contends that "[t]he 'finding' that the 2014 house appraisal report was flawed . . . was substantially unsupported by evidence in the trial" and that "the 2014 appraisal report was much closer in time [to date of the parties' 2013 separation, the valuation date chosen by the court] than the 3-year old appraisal." However, the trial judge is in the best position to evaluate the evidence and to measure its persuasiveness. Salesky, 157 N.H. at 708. The trial court could have accepted the 2011 appraisal because that appraisal stated that it was prepared in connection with a "mortgage finance transaction," while the 2014 appraisal stated that its intended use was for "divorce proceedings." Therefore, we conclude that the trial court's decision to accept the 2011 appraisal was reasonable.

The respondent argues that the trial court erred by failing "to credit [her] with the amount of the mortgage principal debt she had paid since the date of the parties' marital separation." However, the petitioner testified, and the respondent did not contest, that his rental payments after the parties separated were equivalent to the mortgage payments on the house. Furthermore, following the separation, the petitioner paid the mortgage on an undeveloped property, which was included as a marital asset. Therefore, we conclude that the trial court reasonably decided not to credit the respondent with her mortgage payments for the approximately fifteen months from the date of separation to the date of divorce.

We next address the parties' student loan debt. The respondent argues that the only student loan that should have been considered in dividing the marital property was that attributable to her education. She argues that, pursuant to RSA 461-A:21 (Supp. 2014), governing parental rights and responsibilities, "a trial court does not have the jurisdiction to compel one spouse to continue paying for a step-children's [sic] college expenses absent the parties' written agreement to do so." To the extent that the respondent argues RSA 461-A:21 is jurisdictional, she does not develop this argument, and we decline to address it. See State v. Blackmer, 149 N.H. 47, 49 (2003). To the extent that the respondent argues that the trial court lacked the authority to divide existing debt attributable to the parties' respective adult children's college expenses, the record does not show that she made this argument to the trial court. See Bean, 151 N.H. at 250. The respondent testified that, during the marriage, the parties paid the student loan debts from their joint account. Therefore, we conclude that the trial court's decision to consider all the student loan debt was reasonable.

4

We next address the trial court's decision not to award the respondent any portion of the money the petitioner retained from the sale of his mother's house. Although the trial court granted the respondent's requested finding that the petitioner's distribution of these funds to his children "constituted an unjustified and deliberate dissipation of the marital estate irrespective of [the respondent's] voluntary waiver of a claim to any portion of those funds," the respondent testified that she did not feel she was in "any way entitled to" the money the petitioner received from his mother. She agreed that she was not requesting that the trial court impute any portion of that money to the petitioner. The respondent argues that her "express relinquishment of her marital claim to those funds . . . must be reconsidered in light of the overall asset distribution." However, the record does not reflect that she sought reconsideration from the trial court. Therefore, the issue is not preserved for our review. See Butland, 147 N.H. at 679; Fam. Div. R. 1.26(F).

We next address the award of the pet. The respondent contends that her "expenditures for the parties' pet dog, which the court oddly awarded to Petitioner, supported an award of the dog to her and not to Petitioner." The respondent testified that she did not ask the petitioner to contribute to the cost of the dog's surgery. The petitioner testified that the parties had four pets and he sought two of them. We conclude that the trial court's decision to award the petitioner the two dogs he requested was reasonable.

We next address the respondent's argument that "the court's reliance on statutory factors as a basis to award more than half of the marital estate to Petitioner was not supported by sufficient credible evidence." The respondent contends that the evidence did not support "the court's findings that Petitioner's ability to earn income and acquire future capital assets and income were limited." The petitioner testified that his employer was in danger of being put into receivership, at which point he would lose his job. He also testified that the decision regarding receivership was likely to be made in the coming week. However, on the second day of the hearing, seven days after this testimony, the respondent did not question the petitioner further regarding the status of his employer, although she cross-examined him extensively. Therefore, we conclude that the trial court was entitled to rely upon the petitioner's testimony that his job was in jeopardy. See Salesky, 157 N.H. at 708. Furthermore, although the petitioner testified, "I'm probably working until I'm 70 or so," the evidence showed that he was fifty-eight at the time of the hearing, while the respondent was forty-four.

The respondent argues that there was no evidence to support the trial court's finding that the petitioner "entered the marriage with an expectation that the retirement assets he accumulated prior to marriage would benefit him in his retirement." The respondent acknowledges that "[i]t is probably fair to say that any person who earns retirement benefits does so with the expectation those

5

benefits will be available for that person's retirement." She argues that this reasonable expectation was contradicted by the trial court's granting of her requested finding that "[d]uring the marriage the parties entirely integrated their financial affairs" and that "there was ample and uncontradicted evidence supporting a finding that . . . Petitioner had fully anticipated that his retirement assets would be used for the support and benefit of both parties." However, the record shows that the petitioner was significantly older than the respondent, that he entered the marriage with substantial assets, and that the marriage was not long-term.

The respondent argues that the trial court failed to give any weight to her contributions to the accumulation of marital assets or to the fact that her income was substantially less than the petitioner's. She contends that "[t]he unequal property division was an abuse of discretion in a divorce in which no fault was alleged and where the court specifically did not include the length of the parties' marriage as a factor in its decision." However, it is not our role to reweigh the equities in the case. Heinrich, 164 N.H. at 365. We conclude that the record establishes an objective basis sufficient to sustain the trial court's discretionary judgment. See id.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, and Lynn, JJ., concurred.

**Eileen Fox,**
**Clerk**

6