NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

6th Circuit Court-Concord Family Division
No. 2021-0285



IN RE J.D.;

IN RE A.D.

Submitted: November 16, 2021
Opinion Issued: April 20, 2022


John M. Formella, attorney general (Laura E. B. Lombardi, senior assistant attorney general, on the memorandum of law), for the New Hampshire Division for Children, Youth and Families.


Charles A. Russell, of Concord, by brief, for the respondents.


HANTZ MARCONI, J. The respondents, mother and father (collectively, "the parents"), appeal orders of the Circuit Court (Cooper, M., approved by Alfano, J.) granting petitions filed by the New Hampshire Division for Children, Youth and Families (DCYF), terminating the parents' parental rights over their children, J.D. and A.D. We affirm.

I

We summarize the pertinent facts found by the trial court or supported by the limited record provided on appeal. J.D. and A.D. were removed from

their parents' care in July 2017.  In September 2017, the court found that the children were neglected by father and abused and neglected by mother within the meaning of RSA 169-C:3, II(c) (2014) and RSA 169-C:3, XIX(b) (Supp. 2021).  In dispositional orders issued in October 2017, the court specified the conditions that the parents needed to correct and the services that DCYF would provide to facilitate reunification.  In July 2020, the court found that the conditions leading to the abuse and neglect findings had not been corrected and that the parents had not demonstrated that the children would not be endangered if returned.  As a result, DCYF filed petitions for termination of parental rights against both parents in August 2020.

The circuit court held a final hearing on the merits over three days beginning on February 25, 2021.  The court found beyond a reasonable doubt that, despite the provision of reasonable services by DCYF, the parents failed to correct the conditions that led to the abuse and neglect findings.  By orders dated April 30, 2021, the circuit court terminated the parental rights of the parents with respect to A.D. and J.D.  The parents filed a motion to reconsider, which the circuit court denied.  This appeal followed.

II

In reviewing an appeal of termination of parental rights (TPR), we will not disturb the trial court's findings unless they are unsupported by the evidence or plainly erroneous as a matter of law.  In re Zachary G., 159 N.H. 146, 153 (2009).  The parents first argue that the court erred when it failed to order a current social study.  DCYF asserts that the parents failed to preserve this argument for appeal.  We disagree.

The purpose behind our preservation rule is to allow trial courts the "opportunity to rule on issues and to correct errors before they are presented to the appellate court."  State v. Tselios, 134 N.H. 405, 407 (1991).  The record before us indicates that the mother raised this issue in her March 8, 2021 request for findings of facts and rulings of law.  The trial court denied the requested finding "as written" and incorporated this denial by reference into its narrative orders.  Thus, it is evident that the trial court had the opportunity to review the alleged error.  Accordingly, we conclude that this issue is preserved for our review.  Id.

The parents first argue that the plain language of RSA 170-C:9 (2014) requires that a new social study be conducted when the TPR petition is filed. In essence, the parents argue that because RSA 170-C:9, I, contemplates a social study that is ordered after the filing of a TPR petition, a social study conducted prior to that filing, such as one conducted during the preceding abuse and neglect proceedings, cannot satisfy that requirement under RSA 170-C:9, I.  They further assert that, although the circuit court has adopted protocols allowing DCYF to meet this requirement by filing the social study

2

prepared in the abuse and neglect proceeding along with the report prepared for the permanency hearing, "duly enacted statutes. . . take precedence over Protocols." We understand the parents' argument to mean that, because RSA 170-C:9, I, requires "a report in writing" to be made "[u]pon the filing of a petition," DCYF must submit a new, single document labeled "social study" to satisfy the requirement. We disagree.

In matters of statutory interpretation, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. See In re D.O., 173 N.H. 48, 52 (2020). We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. See id. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. RSA 170-C:9, I, provides in relevant part:

> Upon the filing of a petition, the court shall direct that a social study be made by the department of health and human services or by any other authorized agency and that a report in writing of such study be submitted to the court prior to the hearing. The social study shall include the circumstances of the petition, the social history, the present condition of the child and parents, proposed plans for the child, and such other facts as may be pertinent to the parent-child relationship. The purpose of the social study is to aid the court in making disposition of the petition and shall be considered by the court prior thereto.

The purpose of the RSA 170-C:9, I, social study is to "aid the court in making disposition of the petition." RSA 170-C:9, I. The trial court is aided in making this disposition by having information concerning "the circumstances of the petition, the social history, the present condition of the child and parents, proposed plans for the child, and such other facts as may be pertinent to the parent-child relationship." RSA 170-C:9, I (emphasis added). Reading the chapter as a whole in order to effectuate the purpose of the statute, In re D.O., 173 N.H. at 52, we do not read the statute so narrowly as to require a repetitive recitation of information already before the court to be incorporated into a new, single document labeled "social study." Rather, we construe RSA 170-C:9, I, to require DCYF, or another authorized agency, to investigate "the circumstances of the petition, the social history, the present condition of the child and parents, proposed plans for the child, and such other facts as may be pertinent to the parent-child relationship" and to submit the results of that investigation to the trial court in writing. This need not be a single writing, provided that all of the criteria required by RSA 170-C:9, I, are satisfied.

DCYF asserts that the social studies conducted during the abuse and neglect proceedings together with its report submitted for the permanency

hearing sufficiently addressed all of the requirements of RSA 170-C:9, I. The social studies for mother and father were conducted in 2017. The report submitted to the court in preparation for the June 30, 2020 permanency hearing is dated June 22, 2020. DCYF filed the petition for termination of parental rights on August 28, 2020, and the final hearing on the merits did not begin until February 25, 2021 — 8 months after its report for the permanency hearing was last updated. Ordinarily, this 8-month gap in time might cause concern that the reports are not sufficiently "present" to satisfy RSA 170-C:9, I. However, the parents point to no information that renders the June 22, 2020 report prepared for the permanency hearing not reflective of the present condition of the children and parents. Rather, as reflected in the January 25, 2021 final report of the guardian ad litem, there had been no material change since June 22, 2020, in the circumstances of the parents or children. Having reviewed this record, we are satisfied that the abuse and neglect social studies, together with DCYF's report for the permanency hearing, satisfied the criteria required by RSA 170-C:9, I.[1]

The parents next argue that the trial court lacked jurisdiction to terminate their parental rights over J.D. because she had reached the age of majority prior to the orders becoming final. They assert that, although J.D. was 17 when the orders were issued, because she turned 18 prior to the "effective" date of the orders, the trial court lacked jurisdiction to terminate the parents' parental rights with respect to J.D. Notwithstanding that the notices of decision indicated that the order, dated April 30, 2021, would "become final" on June 3, 2021, DCYF asserts that the trial court's order divested the parents of their parental rights, privileges, duties, and obligations "immediately" upon being issued. Whether the circuit court had subject matter jurisdiction is a question of law subject to de novo review. In re G.B., 167 N.H. 99, 102 (2014).

The scope of a court's jurisdiction pursuant to a statute, like RSA 170-C:3, presents a question of law. See In re Guardianship of K.B., 172 N.H. 646, 648 (2019). The circuit court's jurisdiction in termination proceedings is governed by RSA 170-C:3 (2014). Under RSA 170-C:3, the circuit court has "exclusive original jurisdiction over petitions to terminate the parent-child relationship." RSA 170-C:3. A "[c]hild" is defined as "a person less than 18 years of age." RSA 170-C:2, II (2014) (quotation omitted). J.D. was less than 18 years old at the time the court issued its order terminating the parents' rights.

---

[1] The parents also assert that failure to order a social study upon the filing of the TPR Petition violated their due process rights. Even assuming, without deciding, that failure to provide a social study under RSA 170-C:9, I, would result in a violation of the parents' due process rights, our decision reflects that an adequate "social study" was prepared and provided to the parents prior to the final hearing. We observe that the parents have not pointed to any material information missing from the information available to the court. Accordingly, we conclude that the parents' argument lacks merit.

4

The notices of decision, issued May 3, 2021, stated that the matter would become final on June 3, 2021 "if no objections or appeals are filed." However, as DCYF notes, RSA 170-C:15 (Supp. 2021) states "[a]ny party aggrieved by any order or decree of the court may appeal to the supreme court. The pendency of an appeal, or an application therefor, shall not suspend the order of the court regarding the child." In addition, the Circuit Court—Family Division Rules provide that "[t]he filing of a motion for reconsideration or other post-decision relief shall not stay any order of the Court unless, upon specific written request, the Court has ordered such a stay." Fam. Div. R. 1.26 (F). This language makes clear that the order of the trial court regarding the child will take effect immediately, regardless of whether an appeal or a motion for reconsideration is filed. Furthermore, RSA 170-C:12 (Supp. 2021), concerning the effect of a termination decree, explains that "[a]n order terminating the parent-child relationship shall divest the parent and the child of all legal rights, privileges, duties and obligations." These statutes and rule, read together, support the conclusion that the rights of the parents are terminated immediately upon the issuance of the order, regardless of whether the order is considered final for the purpose of appeal. Accordingly, we conclude that because J.D. was under 18 at the time the trial court issued its order, the trial court had jurisdiction to terminate the parents' parental rights over J.D.

The parents next argue that the trial court erred when it declined to appoint independent legal counsel for J.D. and A.D. during the termination proceedings. The parents' brief details several statutes, in which children — and adults who are the subject of a guardianship petition — are entitled to counsel. Based on these statutes, the parents argue that J.D. and A.D. "were denied equal protection under the law, from similarly situated children removed from their home" and "similarly situated adults, potential wards in guardianship cases, when counsel was not appointed for [them] in this matter." Although the parents made vague reference to the right to counsel in delinquency proceedings in their original motion to appoint legal counsel for J.D., they have articulated their equal protection argument for the first time in their brief on appeal. We will not review constitutional issues raised on appeal that were not presented to the trial court. See Dep't of Corrections v. Butland, 147 N.H. 676, 679 (2002). We adhere to this principle because the trial court must have the opportunity to consider alleged errors and to take remedial measures when necessary. Id. Accordingly, we will not consider the parents' equal protection argument on appeal.

The parents also assert that failure to appoint independent legal counsel for J.D. and A.D. violated the children's due process rights and the parents' "residual parental rights." The parents do not, however, except in conclusory fashion, explain how their or their children's due process rights were violated. The parents have not set forth any legal standard under which we should review their due process argument, nor have they cited any legal authority to

support their position.  Accordingly, we conclude that their due process argument is insufficiently developed, and we decline to consider it.  See State v. Ayer, 154 N.H. 500, 513 (2006).

Finally, the parents argue that the trial court erred in terminating their parental rights over A.D. "when no adoption was pending nor contemplated" for the 15-year-old child "while [the] parents were still actively exercising their supervised visitation rights." (Capitalization omitted.)  In other words, they argue that the trial court erred in weighing the factors presented when determining if termination was in the best interest of A.D.  We construe their argument as raising a challenge to the sufficiency of the evidence.  Once a statutory ground for termination of parental rights is established, the court must then consider whether termination, or some alternative dispositional order, is in the child's best interest.  In re S.A., 174 N.H. 298, 300 (2021).  We will not disturb the trial court's findings unless they are unsupported by the evidence or plainly erroneous as a matter of law.  Id.  It is the burden of the appealing party to provide this court with a record sufficient to decide the issues on appeal.  See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).  The parents have failed to provide a transcript of the final hearing.  Absent a transcript of the hearing, we must assume that the evidence was sufficient to support the result reached by the trial court.  Id.

Affirmed.

HICKS, BASSETT, and DONOVAN, JJ., concurred.

6