9th Circuit Court — Nashua Family Division
No. 2014-067

## In the Matter of Valentina Conant and William Faller

Submitted: February 19, 2015
Opinion Issued: April 30, 2015

*Law Offices of Randall E. Wilbert, PLLC*, of Nashua (*Randall E. Wilbert* on the brief), for the petitioner.

*Bosen & Associates, PLLC*, of Portsmouth (*Albert Hansen* on the brief), for the respondent.

*George R. LaRocque, Jr.*, guardian ad litem, of Hudson, by brief, for himself.

DALIANIS, C.J. The petitioner, Valentina Conant, appeals, and the respondent, William Faller, cross-appeals, the final parenting plan issued by the Circuit Court (*Introcaso*, J.). The respondent also cross-appeals the trial court's order concerning child support arrearages and other expenses. *See* RSA 168-A:1, :3-a (2014). We affirm in part and reverse in part.

*I. Background*

The following facts are drawn from the record. The parties are the unmarried parents of a daughter born in March 2012. The petitioner lives in Nashua with her teenage son from a prior marriage, and the respondent lives in Massachusetts.

In May 2012, the petitioner filed a parenting petition. In August, the petitioner filed a motion to establish paternity. In September, after the respondent's paternity of the child had been established by DNA testing, the court dismissed the motion as moot.

In March 2013, the court issued a temporary parenting plan. The plan, in pertinent part, directed that: (1) the petitioner had sole decision-making responsibility for the child; (2) the child would reside primarily with the petitioner; (3) the respondent would have regularly scheduled parenting time; and (4) the exchanges of the child would take place in Nashua.

After the final hearing in October 2013, the court issued the final parenting plan. Because both parties were "mature, well-educated, financially stable . . . [and] capable of providing nurturing support and opportunities to [the child]," the court awarded them joint decision-making responsibilities, as this would "only serve to assure that the child's best interests are met." The court awarded the petitioner primary residential responsibility, and provided the respondent with parenting time during the first, second, and fourth weekends of each month. As the court explained:

> The Court seeks to maximize the parties['] time with the minor child, especially while she is young and creating significant bonds. The parties live apart, creating difficult[y] in having frequent exchanges. The child should have some consistency in a routine while she is young. At this time, her primary bond is with the Petitioner. Both parents, however, are capable of parenting, have strong family support, and can provide love, nurturing and guidance for the child. This is the Respondent's only child at this time and his interest in parenting appears sincere. He has considerable time to devote to the child's care. The Petitioner has a son, the step-sibling of [the child]. Along with the observations and conclusions drawn by the Guardian *ad litem*, the Court attaches significant weight [to] the presence of a sibling in the child's life. The Court finds that it is in the child's best interest to be in the primary physical custody of the Petitioner with . . . parenting times for the Respondent [on the first, second, and fourth weekends of each month].

(Citations omitted.) The court additionally set forth a shared holiday and vacation schedule, and noted that the exchange location of the child would be Littleton, Massachusetts.

In a separate order, the court ordered the respondent to pay the petitioner $4,587 in child support arrearages accrued from the date of the child's birth in March 2012 to June 2012 (when the respondent began paying court-ordered child support). *See* RSA 168-A:1. The court further ordered the respondent to reimburse the petitioner $2,303 for "70% of her lost time from work incurred in her prenatal care and illness, as well as the delivery of the parties' child." *See id.* Both parties unsuccessfully sought reconsideration of the trial court's decisions, and this appeal and cross-appeal followed.

## II. Analysis

### A. Child Support Arrearages and Payment of Other Expenses

The respondent argues that the trial court violated RSA 168-A:1 and :3-a by ordering him to pay the petitioner: (1) $4,587 in child support arrearages, accrued from the date of the child's birth to June 2012 (two months before the petitioner filed a motion to establish paternity); and (2) $2,303 for the petitioner's lost time from work because of prenatal care and illness and delivery of the child. We observe that, on appeal, the respondent does not challenge the child support that the court ordered him to pay after June 2012.

Because resolution of this issue requires statutory interpretation, which is a matter of law, we review the trial court's decision on this matter *de novo. Henderson Holdings at Sugar Hill v. Town of Sugar Hill*, 164 N.H. 36, 38 (2012). In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole. *Id.* We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. *Id.* Further, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.* at 38-39. Our goal is to apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme. *Id.* at 39.

RSA 168-A:1 provides that the father of a child born of unwed parents "is liable to the same extent as the father of a child born in wedlock . . . for the reasonable expense of the mother's pregnancy and confinement and for the education and necessary support of the child." RSA 168-A:3-a provides that if the child is three months old or older, "the father's liability for past education and support under RSA 168-A:1 is limited to amounts accrued from the date of service of the petition on the father," unless the court finds that the father "is willfully avoiding service." If the child is younger than three months, "[t]here is no limitation on retroactive support." RSA 168-A:3-a.

The respondent contends that he is not liable for either amount ordered by the trial court because, instead of filing a paternity "petition," the petitioner filed a "motion" to establish paternity. We are not persuaded and conclude that this argument does not warrant further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

The respondent next asserts that he is not liable for either amount because the petitioner filed her motion "late," that is, after the child was older than three months. This argument is contrary to the plain language of RSA 168-A:3-a, which clearly contemplates that actions to establish

paternity may be brought if a child is older than three months of age. It is also contrary to RSA 168-A:12 (2014), which requires such actions to be brought within 18 years of a child's birth.

To the extent that the respondent argues that the trial court erred by requiring him to reimburse the petitioner for her lost time from work because that amount also accrued before the petitioner filed her motion to establish paternity, we disagree. The respondent's argument is premised upon a misinterpretation of the word "support" as used in RSA 168-A:3-a. He asserts that "support" refers to *both* child support and to payment of prenatal and related expenses. However, we cannot read the word "support" in RSA 168-A:3-a in isolation. *See Henderson Holdings at Sugar Hill*, 164 N.H. at 38-39. RSA 168-A:3-a refers to past "support under RSA 168-A:1," and RSA 168-A:1 distinguishes between the "necessary support of the child" and "the reasonable expense of the mother's pregnancy and confinement." Accordingly, we construe the word "support" in RSA 168-A:3-a to refer to child support and *not* to the mother's pregnancy and confinement expenses. Therefore, we uphold the trial court's order requiring the respondent to pay the petitioner $2,303 for her lost time from work.

However, we agree with the respondent that the trial court erred by requiring him to pay child support arrearages dating from the child's birth to June 2012. RSA 168-A:3-a expressly provides that, if the child is three months old or older, "the father's liability for past education and support under RSA 168-A:1 is limited to amounts accrued from the date of service of the petition on the father," unless the father willfully avoided service. Here, the child was older than three months of age when the petitioner filed, and served upon the respondent, her motion to establish paternity in August 2012. Moreover, there is no evidence that the respondent willfully avoided service. Accordingly, pursuant to RSA 168-A:3-a, the respondent's liability for support under RSA 168-A:1 is limited to amounts accrued *after* August 2012, when he was served with the petitioner's motion. Because the trial court ordered the respondent to pay $4,587 in child support arrearages that accrued *before* August 2012, we reverse that portion of the court's order.

Although the petitioner argues that this result is not "equitable," her argument is unavailing because, as we have stated before, "[t]he wisdom and reasonableness of the legislative scheme are for the legislature, not the courts, to determine." *Blackthorne Group v. Pines of Newmarket*, 150 N.H. 804, 810 (2004). Of course, if the legislature disagrees with our interpretation, it is free to amend the statutes as it sees fit. Additionally, although the petitioner asserts in a single sentence in her brief that the respondent

"waived" or was "estopped" from bringing his arguments based upon RSA 168-A:1 and :3-a, this argument is insufficiently developed for our review. *See Wyle v. Lees*, 162 N.H. 406, 414 (2011).

### B. Parenting Plan

Both parties challenge the details of the final parenting plan. For instance, the petitioner argues that the parenting plan gives too much parenting time to the respondent and does not allow her to spend certain holidays with the child. She also argues that the plan is improper because it requires her to drive to Massachusetts to exchange the child. Similarly, the respondent argues that awarding the petitioner primary residential responsibility is improper because the petitioner was primarily responsible for the animosity between the parties and because the trial court gave too much weight to the fact that the child's step-brother also lives with the petitioner.

In effect, both parties ask us to substitute our judgment for that of the trial court. However, that is not our role on appeal. Our role is merely to determine whether the trial court sustainably exercised its discretion. *In the Matter of Bordalo & Carter*, 164 N.H. 310, 313 (2012). We review only to determine whether the record establishes an objective basis to sustain the trial court's discretionary decision. *In the Matter of Kurowski & Kurowski*, 161 N.H. 578, 585 (2011). We do not reweigh the evidence or substitute our judgment for the trial court's judgment, provided that the trial court's decision could reasonably have been made. *See id.* Based upon our review of the record submitted on appeal, we cannot say that the final parenting plan constitutes an unsustainable exercise of discretion.

*Affirmed in part; and reversed in part.*

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.