NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

3rd Circuit Court-Ossipee Family Division
No. 2016-0683


IN THE MATTER OF GREGORY NEAL AND LAUREN DIGIULIO

Submitted: November 9, 2017
Opinion Issued: March 30, 2018


Law Office of L. Bradley Helfer, PLLC, of Wolfeboro (L. Bradley Helfer on the brief), for the petitioner.


Greene and Greene, PLLC, of Dover (David J. Greene on the brief), for the respondent.


LYNN, J. The respondent, Lauren DiGiulio, appeals an order of the 3rd Circuit Court-Ossipee Family Division (Pendleton, J.) granting the motion of the petitioner, Gregory Neal, to rescind a voluntary acknowledgment of paternity. The respondent also appeals the trial court's denial of a hearing on her request for attorney's fees. We affirm.

The trial court found, or the record reveals, the following facts. In July 2009, the respondent gave birth to a child (the child or the first child). Although the parties lived in New Hampshire, the child was born in Portland, Maine. The day after the child's birth, the parties executed a Maine voluntary acknowledgment of paternity form, acknowledging that the petitioner is the child's "natural father." At the time of the child's birth, the respondent did not raise the possibility that someone else might be the child's father. The parties lived together for approximately three years after the child's birth, and, in

2011, they had a second child (the second child). The parties separated after the birth of the second child.

In 2012, the parties voluntarily underwent paternity testing to determine the paternity of both children. The test results revealed that the petitioner is the second child's biological father, but that he is not the biological father of the first child. The results also established the identity of the first child's biological father, who was then incarcerated. Despite the test results, the petitioner continued to try to have a relationship with the child and had substantial parenting time with the child until March 2014 when the child's biological father was released from prison. At that point, the respondent severed the petitioner's contact with the child in favor of the child's biological father. Thereafter, the petitioner made a number of requests to see the child, all of which were denied. However, at no time did the petitioner file a parenting petition with respect to the child.

On August 24, 2015, the petitioner filed a parenting petition with respect to the second child, without identifying the first child as also being one of the parties' children. In November, in that same proceeding, the petitioner filed a "Motion to Rescind Paternity" of the first child, seeking to rescind the acknowledgment of paternity he executed with respect to the child and requesting that the court "[a]cknowledge that [he] is not the biological father of" the child and "order and declare that [he] is not the legal father of" the child. (Bolding, underlining, and capitalization omitted.)

Following a hearing, the trial court granted the motion, rescinding the petitioner's acknowledgment of paternity of the first child. The court found that the petitioner mistakenly believed that he was the father of the first child at the time of the child's birth, and because the respondent never told the petitioner that there was a chance that he was not the child's father despite possessing "knowledge that clearly could have been relevant, or allowed the parties to address paternity at the time of birth," it would be "unfair . . . to hold [the petitioner] responsible for his good faith act of signing the affidavit of paternity, given the now clearly material misunderstanding of fact under which he acted." Noting that it was the respondent who "terminated the relationship between the parties," the court further found that it would be "equally unfair" to hold the petitioner's "subsequent efforts to continue to parent [the child] against him as grounds justifying denial of his request to rescind the affidavit of paternity."

Finally, the court rejected the respondent's argument that the petitioner was estopped from seeking rescission of the acknowledgment of paternity because he did not immediately do so after learning that he was not the child's biological father. Instead, the court found "it reasonable to grant [the petitioner's] request," recognizing that he "tried to make a good faith effort to take care of a child who needed help" and that it was the respondent "who

2

rebuffed these efforts over the past two years resulting in the current situation where [the petitioner] has no ongoing relationship with" the child. The respondent sought reconsideration, which the court denied.

The respondent also requested attorney's fees for filing a motion relative to a misstatement made by the petitioner's attorney in an objection. The court denied the respondent's request, finding an award of attorney's fees was unwarranted. This appeal followed.

On appeal, the respondent argues that the trial court erred by granting the petitioner's motion to rescind paternity of the child. Specifically, the respondent contends that: (1) the court lacked subject matter and personal jurisdiction; (2) the court applied an erroneous legal standard; and (3) the court should have dismissed the petitioner's motion in light of his delay in seeking rescission. The respondent further maintains that the trial court erred by not granting her a hearing on her request for attorney's fees relative to the misstatement made by the petitioner's counsel in an objection. We address each argument in turn.

I.     Jurisdiction

The respondent first contends that the trial court lacked subject matter and personal jurisdiction over the petitioner's motion because the child was not named in his initial parenting petition, and because the parenting petition did not sufficiently establish the court's jurisdiction over the child pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, RSA chapter 458-A (Supp. 2017). The petitioner counters that the court properly had jurisdiction over his motion to rescind under RSA 5-C:28 (2013).

Resolution of this argument requires that we interpret the relevant statutory provisions. In matters of statutory interpretation, we are the final arbiters of legislative intent as expressed in the words of the statute considered as a whole. In the Matter of Conant & Faller, 167 N.H. 577, 580 (2015). We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. Id. When a statute's language is plain and unambiguous, we need not look beyond it for further indications of legislative intent. In the Matter of Muller & Muller, 164 N.H. 512, 517 (2013). "Courts can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include." Id. (quotation omitted).

Here, in the parenting proceeding initiated by the petitioner with respect to the second child, the petitioner moved to rescind his paternity of the first child pursuant to RSA 5-C:28. RSA 5-C:28 provides, in pertinent part, that:

> I.     A parent or legal guardian may request to rescind an affidavit of paternity from the clerk of the city or town where the

3

birth occurred within 60 days of the filing of an affidavit of paternity unless an administrative or judicial proceeding related to the child results in an earlier date.

. . . .

III.   After the 60-day rescission period has passed, any challenge to the affidavit shall be decided only by a court of competent jurisdiction.

The statute does not otherwise define what constitutes a "court of competent jurisdiction" or what procedures apply to such a proceeding.  However, RSA 490-D:2, I (Supp. 2017) grants the family division jurisdiction over "[p]etitions for divorce, nullity of marriage, alimony, custody of children, support, and to establish paternity."  See also Fam. Div. R. 2.1 (granting the family division "jurisdiction over . . . paternity").  In addition, the family division has "the powers of a court of equity in cases where subject matter jurisdiction lies with [the family division]."  RSA 490-D:3 (2010); see also RSA 490-F:3 (Supp. 2017) (granting circuit court the jurisdiction conferred upon the former judicial branch family division).

Because the family division has subject matter jurisdiction over petitions to establish paternity, and is given equity jurisdiction over cases in which subject matter jurisdiction lies, it logically follows that it has jurisdiction under RSA 490-D:3 to grant the equitable remedy of rescission with respect to an affidavit that establishes paternity.  Thus, we conclude that the family division had subject matter jurisdiction over the petitioner's request to rescind his acknowledgment of paternity.

Relying upon RSA chapter 458-A, the respondent contends that the court never had jurisdiction over the first child because the petitioner failed to identify the child in his initial parenting petition and to articulate sufficient facts in his motion to allow the court to exercise jurisdiction under RSA 458-A:12.  RSA chapter 458-A governs when a court of this state has jurisdiction to make or modify a child custody determination.  See RSA 458-A:12-:15.  "'Child-custody determination' means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child."  RSA 458-A:1, III.  Assuming, for purposes of this appeal, that an order rescinding paternity is a child-custody determination under RSA chapter 458-A, see RSA 458-A:1, IV (defining "'[c]hild-custody proceeding'" to mean, in relevant part, "a proceeding for . . . paternity"), we cannot say that the court erred by exercising its jurisdiction in this case.

Under RSA 458-A:12, as relevant here, a court has jurisdiction "to make an initial child-custody determination" if this state is "the home state of the child on the date of the commencement of the proceeding," or if it has been "the

home state of the child within 6 months before the commencement of the proceeding" and "a parent or person acting as a parent continues to live in this state." RSA 458-A:12, I(a). Although the respondent is correct that the parenting petition did not identify the first child, she does not contend that the petitioner could not have filed the motion to rescind had he named the child in the petition. Nor does she contend that, if the petitioner had named the child, New Hampshire would not have jurisdiction.

By deciding the motion on its merits and rejecting the respondent's argument that the motion was defective, it is apparent that the trial court implicitly allowed the petitioner to constructively amend the petition. We assume that, having done so, the trial court made all necessary subsidiary findings to support its exercise of jurisdiction over the child pursuant to RSA 458-A:12. See In the Matter of Aube & Aube, 158 N.H. 459, 466 (2009) ("We must assume that the trial court made subsidiary findings necessary to support its general ruling." (quotation omitted)). Moreover, absent a transcript of the hearing on the petitioner's motion, we assume that the evidence was sufficient to support those findings. See In the Matter of Rokowski & Rokowski, 168 N.H. 57, 62 (2015); see also Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) (explaining that it is the burden of the appealing party to provide this court with a record sufficient to decide her issues on appeal). Because the respondent does not contend that the court could not have acquired jurisdiction over the child under RSA chapter 458-A, and because we must assume that the evidence supported the trial court's exercise of jurisdiction in this instance, we conclude that the respondent has not demonstrated that the trial court erred by exercising jurisdiction over the first child under RSA 458-A:12.

II.    Applicable Legal Standard

The respondent next argues that the trial court applied an erroneous standard in granting the rescission motion. At the hearing, the parties' arguments were apparently based upon the language in the Maine voluntary acknowledgment of paternity form executed by them after the child's birth. The acknowledgment form specifically advised them of the legal effect of signing it, that they had the right to consult an attorney, that "[i]f [they did] not know who . . . the father of the child[] [was], [they] should seek genetic testing," and that after 60 days had passed, the acknowledgment could "only be removed by going to court and proving that it was signed on the basis of fraud, duress or material mistake of fact."

The respondent contends that the court erred because in granting the petitioner's motion, it used the terms "material misstatement of fact" and "material misunderstanding of fact," rather than "material mistake of fact." (Quotations omitted.) Thus, according to the respondent, the court erroneously

allowed rescission for a reason other than those specified in the acknowledgment form.

We begin by noting that neither party argues for the application of Maine law in this case. Nor does either party argue that Maine law conflicts with New Hampshire law on this point. Rather, their arguments are based solely upon the language of the Maine acknowledgment form. Because both parties rely upon the language of the Maine acknowledgment form as providing the basis upon which the petitioner could obtain rescission, we confine our analysis to the arguments presented by the parties, and we will, therefore, assume, for purposes of this appeal, that such reliance was proper.

The trial court found, immediately before finding that the petitioner signed the acknowledgment under a "material misunderstanding of fact," that he "signed the affidavit . . . with the mistaken belief he was the father." (Emphasis added.) The court went on to find that "there [was] no evidence . . . that [the petitioner] should have suspected otherwise" and that the respondent "would have possessed knowledge that clearly could have been relevant, or allowed the parties to address paternity at the time of [the child's] birth." Given this context, it is difficult to imagine that the trial court's finding regarding the petitioner's "material misunderstanding of fact" could be anything other than a finding that the petitioner signed the form under a "material mistake of fact" as to his biological parentage of the child. See Black's Law Dictionary 1153 (10th ed. 2014) (defining "mistake," as relevant here, as "[a]n error, misconception, or misunderstanding; an erroneous belief"); see also id. (defining "mistake of fact," as pertinent here, as "[a] mistake about a fact that is material to a transaction; any mistake other than a mistake of law"). We, therefore, conclude that the trial court did not apply an erroneous standard in granting the petitioner's motion to rescind paternity.

III.    Delay in Seeking Rescission

The respondent further argues that the petitioner's "request to rescind paternity should have been dismissed" given that the court's findings establish that the petitioner waited more than six years after the first child's birth and more than three years after learning that he was not the child's biological father to seek rescission. (Bolding omitted.) RSA 5-C:28 contains no time limit for seeking a court order rescinding an affidavit of paternity. See RSA 5-C:28. Thus, we construe the respondent's argument to be that the trial court erred by not denying the petitioner's motion because it would be inequitable to grant the petitioner's request to rescind paternity given the delay.

We review the trial court's decision whether to grant equitable relief for an unsustainable exercise of discretion. Benoit v. Cerasaro, 169 N.H. 10, 19 (2016). In doing so, we determine "whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." Id. at 20

6

(quotation omitted). "The court has broad and flexible equitable powers which allow it to shape and adjust the precise relief to the requirements of the particular situation." Id. (quotation omitted). "A court of equity will order to be done that which in fairness and good conscience ought to be or should have been done. It is the practice of courts of equity to administer all relief which the nature of the case and facts demand." Id. (quotation and ellipsis omitted). The party asserting that a trial court order is unsustainable "must demonstrate that the ruling was unreasonable or untenable to the prejudice of his case." Id. (quotation omitted).

We begin by noting that we agree with the respondent that, without more, having voluntarily assumed responsibility for the child's paternity for nearly eight years, the petitioner should not be able to simply disavow that parental responsibility. See In the Matter of Haller & Mills, 150 N.H. 427, 431 (2003). But see In re Paternity of D.L., 938 N.E.2d 1221, 1225 (Ind. Ct. App. 2010) (discussing that establishing paternity in another man effectively operates to disestablish paternity of man who executed paternity affidavit). "The opening of a paternity case sought by a party who has previously acknowledged himself to be the father, should only be allowed in extreme and rare instances." Matter of Paternity of R.C., 587 N.E.2d 153, 157 (Ind. Ct. App. 1992).

Significantly, however, in this case, the trial court found, and it is undisputed, that the respondent "cut off [the petitioner's] contact with [the child] in favor of [the biological father]" when the biological father was released from prison. The court further found that the respondent "first told [the child] that [the petitioner] was not his biological father, and that she made the decision that [the child] should no longer see [the petitioner]." Moreover, as of the date of the trial court's order, the petitioner had not seen the child in two years. What is more, the court found that it was the respondent who "rebuffed [the petitioner's efforts to take care of the child] over the . . . two years [prior to the trial court's order] resulting in the current situation where [the petitioner] has no ongoing relationship with" the child.

In addition, the court found that the petitioner believed that he was the child's father at the time of birth, and the respondent "never told him that there was a chance he was not the father." According to the trial court, and undisputed on appeal, there was no evidence "that [the petitioner] should have suspected otherwise." Thus, the court found that the petitioner "signed the affidavit of Paternity with the mistaken belief he was the father." It is undisputed that paternity testing has since established that the petitioner is not the biological father of the child and revealed the identity of the man who is the child's biological father.

"Our task is not to determine whether we would have found differently." Benoit, 169 N.H. at 21 (quotation, brackets, and ellipsis omitted). Our only

function on review is to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it. Id. We conclude that, under the specific circumstances of this case, the record establishes an objective basis sufficient to sustain the trial court's ruling that, despite the petitioner's delay in filing the motion, it is fair to allow the petitioner's motion for rescission of paternity. Accordingly, the respondent has failed to establish that the court's order constitutes an unsustainable exercise of discretion.

IV.    Attorney's Fees

Finally, the respondent argues that the trial court erred by denying her a hearing on her request for attorney's fees. After the trial court granted the petitioner's motion to rescind, the respondent moved for reconsideration, and the petitioner objected, in part, on the basis that the motion was untimely. In arguing timeliness, the petitioner apparently failed to account for a holiday. The respondent filed a response in which she pointed out his error and requested an award of attorney's fees for having been required to prepare the response. The petitioner subsequently acknowledged the error and corrected his objection, and the trial court denied the respondent's request for attorney's fees. Subsequently, the court scheduled a hearing on a request for attorney's fees that the petitioner had filed in connection with a separate discovery dispute. Following the hearing, the trial court granted the petitioner's request for fees in the discovery dispute.

The respondent argues that the trial court treated her unequally by granting the petitioner a hearing on his request for attorney's fees, but not also granting her a hearing on her request for attorney's fees and without explanation as to why her request was denied. It is the burden of the appealing party, here the respondent, to provide us with a record to demonstrate that she raised her issues in the trial court. See Bean, 151 N.H. at 250. A review of the appellate record does not demonstrate that the respondent ever sought a hearing on her request for attorney's fees. In addition, when an error first appears in the trial court's final order, it must be raised in a motion for reconsideration to preserve it for appellate review. See N.H. Dep't of Corrections v. Butland, 147 N.H. 676, 679 (2002). Here, there is no evidence that the respondent sought reconsideration of the court's order denying her request for fees without a hearing, nor does it appear that she sought reconsideration of the court's order granting the petitioner a hearing on his request for fees. Thus, we conclude that the respondent has failed to preserve this issue for our review and, we, therefore, decline to address it.

Affirmed.

DALIANIS, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

8